HARRIET B. C. BULLMAN *vs.* NORTH BRITISH AND MER-
CANTILE INSURANCE COMPANY.

SAME *vs.* INSURANCE COMPANY OF NORTH AMERICA.

SAME *vs.* FRANKLIN FIRE INSURANCE COMPANY.

WILLIAM F. BULLMAN *vs.* NATIONAL FIRE INSURANCE
COMPANY.

SAME *vs.* COMMERCIAL UNION ASSURANCE COMPANY.

SAME *vs.* INSURANCE COMPANY OF NORTH AMERICA.

Hampshire.    March 13, 1893. — May 18, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Fire Insurance — Evidence — Referee — Husband and Wife — Assignment — Action.*

In an action upon a policy of insurance against loss by fire, the answer imputed fraud or bad faith to the plaintiff in this, that in his proof of loss he did not set forth the purposes for which, and the persons by whom, the building insured was used, and concealed the fact that it was used as a hotel and summer resort. The defendant, at the close of the plaintiff's evidence, called several witnesses in support of this ground of defence, and also introduced evidence tending to show that for boarding-houses having more than ten boarders a higher rate of premium would be charged than for dwelling-houses. To meet this evidence, the plaintiff was permitted to testify, in rebuttal, that, before the policy was issued, and at about that time, he told the defendant's agent that it was his intention to keep boarders. This agent had already testified that he made no difference between the rates for insuring dwelling-houses and those for insuring boarding-houses in the town where the plaintiff's property was situated. The

defendant objected to the plaintiff's testimony in rebuttal, on the ground that the issues presented by the defendant's answer and testimony, as above set forth, were no longer material at the trial, because the presiding judge had arranged, with the consent of counsel, to submit two questions only to the jury, namely, whether the plaintiff had voluntarily set the fire, and whether the use of the property had been so changed after the policy was issued as to avoid the same. It did not appear at what stage of the case the questions to be submitted to the jury were settled, or whether it was before or after the admission of the plaintiff's testimony. *Held*, that the defendant had no ground of exception.

A., who acted as one of three referees in adjusting the amount of loss under a policy of fire insurance, held at the time he so acted a promissory note made by the assured and his wife, which was secured by a second mortgage of real estate, including the property destroyed by the fire ; and he held the note and mortgage to secure him for his indorsement of another note of the same amount given by the wife to a third person, which had not then become due. A. was selected by the two other referees, and his selection was unknown to the assured until several weeks after the award had been made. *Held*, in an action on the policy, that the court was not required to rule, as matter of law, that A. was not a disinterested referee.

Where insured property is transferred from one person to another, and the insurance policy is assigned to the new owner with the assent of the insurer, the assignee becomes the insured and may maintain an action on the policy in his own name; and it is immaterial that the assignee is the husband of the assignor, and that she assigned the policy directly to him.

If a policy of insurance against loss by fire covers both real estate and personal property, and the owner transfers the personal property to another, and, with the consent of the insurance company, assigns to him the policy so far as it relates to the personal property, each may maintain an action on the policy for his respective loss.

SIX ACTIONS OF CONTRACT upon policies of insurance against loss by fire on certain property in Amherst. The plaintiff in the first three actions was the wife of the plaintiff in the other actions. The first three actions were brought to recover the several amounts insured upon buildings and fixtures named in the respective policies, and which were totally destroyed by fire on September 11, 1891. The last three actions were brought for the loss of personal property contained in the buildings. The cases were tried together in the Superior Court, before *Aldrich*, J., who, after a verdict for the plaintiff in each case, reported them for the consideration of this court. The facts material to the points decided appear in the opinion.

*J. C. Hammond*, (*J. D. Bryant* with him,) for the defendants.

*W. G. Bassett*, for the plaintiffs.

ALLEN, J. 1. The amended answers impute fraud or bad faith to the plaintiffs in several particulars, and among them in

this, that the plaintiffs in their proofs of loss did not set forth the purposes for which and the persons by whom the building insured was used, and concealed the fact that it was used as a hotel and summer resort. The defendants at the close of the plaintiffs' evidence called several witnesses in support of this ground of defence, and also introduced evidence tending to show that for boarding-houses having more than ten boarders a higher rate of premium would be charged than for dwelling-houses. To meet this evidence Mrs. Bullman was permitted to testify in rebuttal that before the policies were issued, and at about that time, she told the agent of the defendants that it was her intention to keep boarders. This agent had already testified that he made no difference between the rates for insuring dwelling-houses and those for insuring boarding-houses in Amherst. The defendants in effect concede that Mrs. Bullman's testimony would have a tendency to meet the issues presented by their answers and testimony, as above set forth ; but they rest their objection to its admission on the ground that those issues were no longer material at the trial, because the presiding justice had arranged with the consent of counsel to submit two questions only to the jury, namely, whether the plaintiffs had voluntarily set the fire, and whether the use of the property had been so changed after the policies were issued as to avoid the same. There are two satisfactory answers to this position of the defendants. In the first place, it does not appear at what stage of the case the questions to be submitted to the jury were settled, or whether it was before or after the admission of Mrs. Bullman's testimony ; and, secondly, even after the defendants had withdrawn this ground of defence, it was within the discretion of the presiding justice to allow the plaintiffs to meet a charge of concealment made against them in the answers, and supported by testimony. *Dorr* v. *Tremont National Bank,* 128 Mass. 349, 360. *Dawson* v. *Boston & Maine Railroad,* 156 Mass. 127.

2. In respect to the three actions in favor of Mr. Bullman, to recover for the loss of personal property, the objection was taken that a reference of the amount of loss to three disinterested men was a condition precedent to his right of action, under the terms of the policies, and that no such reference had been made, because Palmer, one of the referees who was selected and

who acted, was not disinterested. The policies were in the form prescribed by St. 1887, c. 214, § 60, called the Massachusetts standard policy.

It appeared that Palmer was not selected nor named by Bullman, or on his behalf, but by the two other referees. The fact that Palmer had been so selected was not known to Bullman till several weeks after the award had been made, he having been very sick with fever, and delirious and unconscious. There was no claim on the part of the defendants that the damages found by the referees were excessive. But Palmer at the time of his appointment and when he acted as referee was the holder of a note for $1,486, made by Mr. and Mrs. Bullman, which note was secured by a second mortgage on real estate, including the house and barn destroyed by the fire; and he held said note and mortgage to secure him for his indorsement of a note for the same amount given by Mrs. Bullman to a third person, which had not then become due. Under this state of things, the defendants did not ask to have the jury or the court find as a matter of fact that Palmer had an actual interest, or felt such a degree of interest in the subject of the reference as to affect his judgment or his action as referee; but they asked the court to rule, as a matter of law, that he was not a disinterested referee. The question is not whether, on proper proceedings taken in advance of the hearings, the court would interpose to set aside the selection of such a referee; *Beddow* v. *Beddow,* 9 Ch. D. 89; but whether the court should say, as matter of strict law, upon the facts which appeared, that he cannot be considered as disinterested, although no complaint whatever is made of the manner in which he performed his duties, or of the result to which the referees came. And it is obvious that there is no rule of law which requires the reference to be treated as invalid. The mere fact that he was liable as indorser on an unmatured note for $1,486, and so was liable to become a creditor of Mr. and Mrs. Bullman to that amount, does not show necessarily that he was interested. He held a second mortgage on real estate as security, and this may have been ample. There was nothing to show the value of the premises, nor the amount of the first mortgage, nor the amount of other property owned by the Bullmans. Palmer may or may not have been interested in the amount to

be recovered by Mr. Bullman upon these policies. The facts which were shown are consistent with either hypothesis. The mere fact that he was a creditor, or a possible creditor, is not sufficient to show that he was disqualified. *Wallis* v. *Carpenter,* 13 Allen, 19, 24. See also *Leominster* v. *Fitchburg & Worcester Railroad,* 7 Allen, 38; *Dolliver* v. *St. Joseph Ins. Co.* 131 Mass. 39; *Fisher* v. *Towner,* 14 Conn. 26; *Rand* v. *Redington,* 13 N. H. 72; *Morgan* v. *Morgan,* 1 Dowl. Pr. Cas. 611; Morse on Arbitration and Award, 100. In like manner, when interest disqualified a witness, a creditor might testify for his debtor. *Luke* v. *Leland,* 6 Cush. 259, 262. *Barney* v. *Newcomb,* 9 Cush. 46, 57. *Nowell* v. *Davies,* 5 B. & Ad. 368. 1 Greenl. Ev. § 389.

We do not consider the question whether, on the facts stated, the referee's interest, if established, would necessarily defeat the actions.

3. It is further objected that the assignment of policies from Mrs. Bullman to her husband did not convey to him any legal interest in the policies, and that therefore the actions brought by Mr. Bullman cannot be maintained. It is, however, well settled in this Commonwealth, that where insured property is transferred, and the policy is assigned to the new owner with the assent of the insurer, such assignee thereupon becomes the insured, and may maintain an action on the policy in his own name. The principle is fully explained in *Fogg* v. *Middlesex Ins. Co.* 10 Cush. 337, 345, 346, and it has often been recognized both here and elsewhere. A new relation is created between the insurer and the assignee, just as if the original policy were surrendered and a new one issued. See *Mutual Ins. Co.* v. *Allen,* 138 Mass. 24, 29; *Lynde* v. *Newark Ins. Co.* 139 Mass. 57; *Phillips* v. *Merrimack Ins. Co.* 10 Cush. 350, 353; *Kingsley* v. *New England Ins. Co.* 8 Cush. 393; *Wilson* v. *Hill,* 3 Met. 66, 69; *Carroll* v. *Boston Ins. Co.* 8 Mass. 515; *Bates* v. *Equitable Ins. Co.* 10 Wall. 33, 36; *Cummings* v. *Cheshire County Ins. Co.* 55 N. H. 457; *Shearman* v. *Niagara Ins. Co.* 46 N. Y. 526; *Hooper* v. *Hudson River Ins. Co.* 17 N. Y. 424; *Flanagan* v. *Camden Ins. Co.* 1 Dutch. 506, 514; *Continental Ins. Co.* v. *Munns,* 120 Ind. 30; *New* v. *German Ins. Co.* 31 N. E. Rep. 475; *Ellis* v. *Council Bluffs Ins. Co.* 64 Iowa, 507. The defendants' argument has rested largely on the ground that a married woman cannot

transfer property directly to her husband.   But the policy in such a case is not transferred as property ; it is not even assigned as a chose in action.   The property insured being transferred, the policy by force of its provisions and of the statute would cease.   It is not a negotiable contract; but it has a value for the purpose of surrender to the company which issued it, and the effect of the transaction is that the insurance company says the policy shall be valid according to its terms to the new owner of the property.   It is quite immaterial that such new owner is the husband of the original owner, or that the form of the writing upon the policy would be insufficient for a transfer of property between them.   It is the assent of the insurer which gives efficacy to the transaction.

4. The policy of the Insurance Company of North America insured $500 on the house, $500 on the barn, $1500 on furniture, $650 on live stock, and $250 on vehicles.   The personal property was conveyed by Mrs. Bullman to Mr. Bullman through a third person, and the policy so far as it relates to the personal property was assigned to him, and the consent thereto of the company was indorsed upon the policy with the assignment; and accordingly she has brought an action to recover for the loss upon the real estate, and he has brought another action upon the same policy to recover for the loss upon the personal estate.   The consent of the company was given and signed by its agent, whose power of attorney authorized him to " consent to the transfer and assignment of policies of insurance."   This included authority to consent to the assignment of the policy so far as it related to the personal property.   There is no legal difficulty in making an assignment in such form that, if assented to, the policy will thenceforward run to different persons and insure different interests, each of which will be the subject of a distinct and independent remedy.   Phil. Ins. (5th ed.) §§ 234, 383, 396. *Hagedorn* v. *Bazett*, 2 M. & S. 100.   In this case, the personal property having been alienated, the policy would be void so far as that property is concerned, but not as to the real estate. *Clark* v. *New England Ins. Co.* 6 Cush. 342.   But the consent of the company made it valid to the new owner of the personal property.

*Judgments for the plaintiffs.*