EDWARD P. SQUIRES v. JOHN J. O'CONNELL ET AL.

Special Term at Brattleboro, February, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed November 15, 1916.

*Evidence—Admissibility—Books of Original Entry—Corrob-
oration of Entries—Dispensing with Testimony of Witness
—Presumption in Support of Ruling of Trial Court—
Agency—Prejudicial Error—Exceptions—Curing Error—
Withdrawal of Evidence from Jury—Experts—Finding of
Qualifications.*

A party's book of original entry is the first regular and collected
record, although made up from casual and scattered memoranda
or wholly from memoranda and reports of employees and evi-
dencing nothing of which the party or his book-keeper had per-
sonal knowledge; and the book is not rendered inadmissible by
the fact that the memoranda and reports have been lost, or in-
tentionally destroyed.

Where the entries in plaintiff's account book were made up from
measurements of lumber, kept on tally boards at plaintiff's mill,
and from memoranda made by plaintiff after examining and
measuring the lumber, and from information received from plain-
tiff's employees, who measured the same, the book was properly
admitted in evidence, although the tally boards and memoranda
had been destroyed, and one of the employees, who was with-
out the State, was not called to testify that the measurements
and the report made by him were correct.

It is well settled that the various inferior employees of a large busi-
ness, whose memoranda of time, material, receipts, deliveries
and the like are the bases of the entries in the original account
book offered in evidence, need not be called as witnesses to au-
thenticate the account.

Where an entry is made by one person in the regular course of busi-
ness, recording an oral or written report, made to him by an-
other in the regular course of business, of a transaction lying in
the personal knowledge of the latter, the entry may be received
in evidence without producing as witnesses the persons thus con-

cerned, provided the practical inconvenience of producing them would in the particular case outweigh the probable utility of doing so; and the application of this rule involves the determination by the trial court of a preliminary question, regarding which much must necessarily be left to its sound discretion.

The unavailability of a witness, who is out of the State, is a sufficient ground for dispensing with his testimony in corroboration of entries in plaintiff's book of accounts, made upon his reports.

Under the circumstances of this case, it will be presumed, in support of the ruling of the trial court dispensing with the testimony of a witness in corroboration of certain entries in plaintiff's book of account, that the court was justified in finding the necessity for so doing established.

In an action to recover a balance claimed to be due upon a contract for cutting, sawing and sticking up lumber, evidence of the plaintiff that the lumber in question was correctly measured, when understood to refer to the result of the tests made by him personally, was properly received.

Evidence that when orders for lumber, given by defendants to one Hobbs, and by him given to plaintiff's mill foreman, were filled for the defendants by the plaintiff, the latter reported them to Hobbs who reported them to the defendants, and that the orders were deducted on his book and the amount sent in to the defendants, tended to show that Hobbs was acting for the defendants to some extent, but in nothing beyond what pertains to the ordinary duties of a foreman.

Evidence of an assumption of authority on the part of one to speak for the defendants in a matter touching the contract at issue and its performance, is not admissible as tending to prove that the person assuming the authority was the defendants' agent, where there is nothing to show that it ever came to the knowledge of the defendants.

Where one stated that he was agent for another and the latter was present and said nothing, but said later upon the same occasion that the former was his agent in the matter in question, this was evidence tending to establish the agency, both by an admission in terms and by silence when the circumstances called for utterance.

A party is not prejudiced by the reception of inadmissible evidence, where the case discloses nothing wherein the subject-matter of

the evidence affected the sole question in issue between the parties.

Where a ·hypothetical question, admitted under objection and exception, is not complete as first asked, but is completed by a second question, the exception taken covers both questions.

Error in the admission of improper testimony under objection and exception, is not cured by a charge to the jury not to consider it.

Where certain evidence was admitted under exception and was later stricken out on the motion of the party offering it, under the exception of the opposing party, the objection to the motion to strike out was made to protect the exception to its admission, and the exception to the granting of the motion covers the question whether the error, if such it was, was cured by it.

Where a witness, after testifying to his qualifications as an expert, is permitted to answer a hypothetical question, objected to upon the ground that he is not qualified as an expert, the admission of the testimony is an implied finding by the trial court that he is so qualified.

Objections not made in the court below are not considered in Supreme Court.

ASSUMPSIT, to recover a balance claimed to be due the plaintiff under a contract with the defendants for cutting, sawing and sticking up certain lumber. Pleas, the general issue, payment, and declaration and specification in offset. Trial by jury at the September Term, 1914, Windham County, *Waterman*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*A. F. Schwenk* for the defendants.

*H. G.* and *F. E. Barber* for the plaintiff.

MUNSON, C. J. The plaintiff claims to recover a balance due him for cutting, sawing and sticking up lumber under a contract with the defendants. The amount of the lumber is the only thing in dispute.

The plaintiff testified that he sublet the cutting and drawing to one party, and the drawing out and sticking up to another; that he was not personally on the job, except that he

went to the mill about once in two weeks; that he employed a sawyer and a man to measure the lumber; that Rowland 'was the measurer until the job was nearly completed, and that Carruth then took his place; that the measurement was kept on tally boards in the mill, and that when he went there he took figures from the tally board and examined the markings on the lumber and the measurement of it; that he received figures from Rowland and Carruth as to the lumber measured and set them down correctly at the time in a book kept at his house; that he had no other account of the lumber,—the tally boards and the memoranda obtained from the measurers having been destroyed. The book was received in evidence in connection with the testimony of the plaintiff, against the defendants' objection and exception. The objection was general, but the grounds of objection were manifest from the detailed explanation of the manner in which the business was done and the account kept; and the book was doubtless received when it was, in the expectation that Rowland and Carruth would be called to authenticate the account. The plaintiff was then allowed to testify that the book represented the correct amount of lumber as reported to him by Rowland and Carruth, and to give from it the total amount of lumber sawed on the job. The statement of the amount was objected to as hearsay. Rowland was a witness later, and testified that he was experienced in measuring lumber, and that he measured and marked this lumber correctly, and correctly reported the account to the plaintiff from time to time when he was at the mill. This verified as much of the account as was based on Rowland's reports, but the statement of the total amount of lumber sawed remained hearsay, unless the production of Carruth's evidence was legally dispensed with.

The defendants claim that the book received in evidence was not a book of original entry, but that the original entries were those on the tally boards kept by the measurers and the memoranda taken by the plaintiff when on the lot. This position is not well taken. See *Gifford* v. *Thomas,* 62 Vt. 34, 19 Atl. 1088. It may be stated generally that the first regular and collected record is the original book, although made up from casual or scattered memoranda. 2 Wig. Ev. §1558. It may be the party's original book of accounts, even if made wholly from the memoranda and reports of the employees doing his business, and evidencing nothing of which he or his

bookkeeper had personal knowledge. Note 138 Am. St. Rep. 456. The fact that the memoranda and reports have been lost, or intentionally destroyed as unimportant, will not make the book inadmissible. *Mahoney* v. *Hartford, etc., Corp.,* 82 Conn. 280, 73 Atl. 766.

The total given from the book covered the lumber measured and reported by Carruth. Carruth was not a witness; and the exceptions show that this was because he was absent from the State, and show further that it did not appear but that the plaintiff knew where he was, so that he could have taken his deposition. There are authorities which hold that the mere fact of absence from the State is sufficient to justify the court in dispensing with evidence of this character, but we know of no decision in this State which goes to this length. It seems to be well settled, however, that the various inferior employees of a large business, whose memoranda of time, material, receipts, deliveries, and the like, are the bases of the account, need not be called as witnesses. But the ordinary protection of the other part of the business world seems to require that the supervising employees, under whose management and observation this work goes on, and who receive, consolidate and transmit this data to those who make up the permanent account, should be called if reasonably accessible. If this is not required, the matter will rest entirely upon the fact that it is something done in the regular course of the business, and not at all upon the oath of any one having personal knowledge of it.

Mr. Wigmore, in treating of regular entries as an exception to the hearsay rule, formulates the rule that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by another in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry, provided the practical inconvenience of producing as witnesses the persons thus concerned would in the particular case outweigh the probable utility of doing so. 2 Wig. Ev. §1530, p. 1895. The application of this rule manifestly involves a determination by the trial court of a preliminary question, regarding which much must necessarily be left to its sound discretion. 2 Wig. Ev. §1530. The showing that Carruth was out of the State at the time of the trial supports

the court's ruling admitting the book as offered. The control-
ling principle is that of practical necessity, and Carruth's un-
availability as a witness was a sufficient ground for dispensing
with his testimony in corroboration of the entries made on his
reports. *Griffin* v. *Boston & M. R. Co.*, 87 Vt. 278, 292, 89 Atl.
220; *Osborne* v. *Grand T. Ry. Co.*, 87 Vt. 104, 88 Atl. 512,
Ann. Cas. 1916 C, 74; 2 Wig. Ev. §§1521, 1530. In the cir-
cumstances we must presume in support of the ruling that the
trial court was justified in finding the necessity established.

The plaintiff was asked to state whether the lumber was
correctly measured, and replied that it was. The connection
in which this statement appears seems to indicate that it was
made regarding the lumber generally as a matter of direct
knowledge; but it may have been given as the result of the
tests which the witness had made, and if so understood it was
not error. If this was the meaning of the evidence, it was ad-
missible as tending to show that the measurement was correct.

The plaintiff's evidence tended to show that one Hobbs, an
employee of the defendants who had general charge of the job,
was the defendants' agent; that considerable of the lumber was
cut into dimension stock, and that the orders for this came from
the defendants to Hobbs and were given by him to the mill
foreman. The plaintiff was asked, for the purpose of proving
the agency, what was done with reference to these orders when
filled, and said that he reported them to Hobbs, and Hobbs re-
ported them to the defendants; that they were deducted on his
book, and the amount sent in to the defendants. This evidence
tended to show that Hobbs was acting for the defendants to
some extent, but in nothing beyond what pertains to the ordi-
nary duties of a foreman.

One of the persons who had the contract for cutting and
hauling to the mill was permitted to testify, in proof of the
agency, that Hobbs was on the job when the work was com-
pleted; that he went over the lot with witness and his partner,
and found a few trees more that he wanted cut, and said that
when those were cut and cleaned up the job would be accepted.
This was an assumption of authority to speak for the defendants
in a matter touching the contract and its performance, but there
is nothing to show that it ever came to the knowledge of the
defendants.

After the job was completed, Mr. Chase brought a suit against the plaintiff in favor of Mather, one of the sub-contractors, and trusteed the defendants; and evidence was received of a conversation had in the office of Mr. Chase when defendant O'Connell, Hobbs and Mather were present. Mather testified that Hobbs said that he was the agent, that the writ was served on him and was good, but that the check was sent to the plaintiff; and that O'Connell was present and said nothing. Chase testified that he asked O'Connell the direct question whether Hobbs was their agent in this matter, and that O'Connell said he was. This was evidence tending to establish Hobbs' agency both by an admission in terms and by silence when the circumstances called for utterance.

But we think the defendants cannot have been prejudiced by any inadmissible evidence on this subject, for the case discloses nothing wherein any exercise of authority on the part of Hobbs affected the sole matter in issue between the parties.

The plaintiff produced as a witness John E. Gale, an attorney at law, who testified that he had had some experience in the lumber business in cutting off lots and selling and marketing lumber, and that there was a shrinkage in soft wood lumber from the time it was cut until it was marketed. The witness was then permitted to state in response to inquiries what the percentage of shrinkage would be from saw to customer on lumber half and half spruce and hemlock and half and half old growth and second growth, sawed square-edge and butted, including dimension stuff, and assuming that half was shipped on the cars; to state what the percentage of shrinkage would be on a lot of hard wood lumber sawed through and through and disposed of in the local market; and, on the assumption that two-thirds of a given amount of lumber was stacked in the yard, and that stickers one inch square were used, with a board six inches wide at one end between each layer, to state what the amount of the lumber in stickers would be as compared with the other lumber in the pile.

On the day following the introduction of this testimony, plaintiff's counsel asked the court to strike it from the record, and withdraw it from the consideration of the jury, and instruct the jury to disregard it. The court granted the motion, and allowed the defendants an exception. There was other evidence of Mr. Gale in which he gave estimates of the amount of

lumber used and left on the lot in shanties, barns, bridges, fences, bed pieces and edgings. The exceptions state that the court did not instruct the jury as to what part of the evidence of Mr. Gale was elicited by hypothetical questions, nor explain to them the meaning and import of hypothetical questions.

It is now claimed that the defendants have no valid exception to the testimony above recited, but we think otherwise. The claim that the first answer was harmless and that the second came in without objection, is made possible by overlooking the fact that what is called the second question was but the completion of the preceding one. As to the last question, the court, in its desire to caution plaintiff's counsel regarding the evidence, interrupted defendants' counsel before he had fully stated his objections; and when plaintiff's counsel insisted that the evidence was proper, the court admitted it, and in doing so expressly gave the defendants an exception.

But the plaintiff claims that if error does appear in the admission of the evidence, it was cured by withdrawing it from the consideration of the jury. The three cases cited afford no support to the claim. In *Randolph* v. *Woodstock,* 35 Vt. 291, it was held that if a witness gives improper testimony before there is time to check him or interpose an objection, and the court instructs the jury not to consider it, there is nothing that can be treated as error. In *Morse* v. *Richmond,* 42 Vt. 539, it was held that if a witness volunteers an improper statement which is instantly objected to and ruled out as inadmissible, the court cannot properly treat it as in the case. In *Hawkes* v. *Chester,* 70 Vt. 271, 40 Atl. 727, it was held that where an answer goes beyond the scope of the question, and is stricken out by the court on the request of the examiner, no exception is available.

Plaintiff's counsel suggest, rather than claim, that in objecting to the striking out of the testimony the defendants were taking a position inconsistent with their previous attitude in regard to it. The defendants wished to keep the testimony out, but after it was in, they could properly act upon the theory that their exception to its admission might be worth more to them than its removal from the record, however vigorously the court might instruct the jury to disregard it.

There is nothing in this case to take it out of our well settled rule that the error of admitting improper testimony,

which is objected to, is not cured by a charge to the jury not to consider it. Vt. Dig. c. 124, pl. 269. This evidence bore directly upon the amount of the lumber sawed, and that was the only question in the case.

But it does not follow that there was reversible error. This will depend upon a consideration of the exceptions taken to the admission of the evidence. Defendants' counsel does not claim error in striking out the evidence, but insists there was error in receiving it, and combats the plaintiff's claim that this could be cured by striking out. His objection to the motion to strike out the evidence was made to protect his exceptions to its admission, and his exception to the granting of the motion merely covers the question whether the error, if such it was, was cured by it.

Error in receiving the evidence is not made to appear. There was a shortage in the amount of lumber credited by defendants, and Gale's testimony tended to show how it could be accounted for. Defendants contend that he was not qualified as an expert, but the exceptions state that he had had some experience in the lumber business, and in cutting, selling and marketing lumber. He testified without objection to his qualification as an expert, except that to one question counsel objected, "I don't think he is qualified as an expert on that." The court admitted the answer, thus impliedly finding him qualified. Defendants now urge that it was not proper subject-matter for expert testimony, but no such objection was made below. It is also urged that the hypothetical questions put to the witness did not include all the essential elements of the testimony, and that they included matters that did not appear in evidence. No such objection was suggested below, and there is nothing from which we can say that the objection, if seasonably made, had any foundation.

*Judgment affirmed.*

MUNSON, C. J. (dissenting). I think the Court's disposition of two of the questions raised is not justified by the exceptions. The statement in the exceptions regarding the non-production of Carruth is this: "Carruth was not improved as a witness because he was absent from the State." This is a statement of the omission of counsel, and not of the court's sanction

of it. There is nothing to show that the court made any ruling, or exercised its discretion in any way, or was called upon to do so. As regards Gale's testimony, the majority say the objection that the subject of the inquiry was not proper for expert testimony was not made below. The court evidently understood that it was made, and ruled on that understanding, and defendants' counsel might well have supposed from the course taken that he was relieved from making more specific objections. Defendants' counsel was proceeding: "He has incorporated into his question the—," when the court interrupted him, and inquired of plaintiff's counsel if he claimed this was proper to be shown by an expert witness, and, on receiving an affirmative reply, directed plaintiff's counsel to proceed and gave defendants an exception. Plaintiff's counsel evidently had this understanding of the scope of the objection, for he stated to the court, in making his motion to strike out, that on examination he found there were a great many elements involved in the subject that were not covered by his questions.