## CUB FORK COAL CO. et al. v. FAIRMONT GLASS CO.

Circuit Court of Appeals, Seventh Circuit.
May 27, 1927.

No. 3838.

1. **Evidence** ☞354(10)—**Evidence within exception to rule requiring book of original entry must be relevant and necessary with guaranty that transaction occurred as recorded.**

In order to bring evidence within exception to requirement that evidence must be taken from book of original entry, it must appear to be relevant, with a practical necessity for its introduction, and circumstantial guaranty that transaction occurred as recorded.

2. **Evidence** ☞354(13)—**Evidence of car shortage from records made from reports to witness in due course of business held competent.**

In seller's action for damages for alleged breach of contract for sale of coal, providing that shipments should be made on certain date in so far as labor and ability of carriers would permit, evidence of car shortage by witness describing himself as statistician in charge of coal car accounts, from records made in his office and based on reports sent him in due course of business by local car distributor, *held* erroneously excluded as incompetent, in view of evidence tending to show practical necessity for its introduction and showing that transaction occurred as recorded.

3. **Sales** ☞388—**Instruction requiring seller to prove that coal specified was furnished held erroneous, where buyer waived right to rescind for quality.**

In seller's action for damages for alleged breach of contract for sale of coal, instruction requiring plaintiff to prove that it furnish certain size coal, or its inability to so furnish coal in accordance with requirements of contract, *held* erroneous, in view of evidence establishing waiver of buyer's right to rescind because of quality of coal shipped.

In Error to the District Court of the United States for the District of Indiana.

Action by the Cub Fork Coal Company and another against the Fairmont Glass Company. Judgment for defendant, and plaintiffs bring error. Reversed, with directions.

Connor Hall, of Huntington, W. Va., for plaintiffs in error.

Paul Y. Davis, of Indianapolis, Ind., for defendant in error.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

EVANS, Circuit Judge. This action was one for damages for alleged breach of contract. A judgment for defendant followed the rendition of a general verdict in its favor.

19 F.(2d)—18

Plaintiff sold defendant 17,500 tons of coal to be delivered—1,000 tons the first month (July), and 1,500 tons each month for the succeeding 11 months. The coal was to be "paragon or Cub Fork egg. In case shipper is unable for any reason to deliver the full tonnage in egg size, mine run will be accepted." Deliveries were "subject to strikes, accidents, car supply, federal and state regulations, constraint of law, and other causes beyond our control." It was further provided that "the material shall be shipped * * * in so far as the labor and the ability of the carriers will permit."

It was alleged in the complaint that the shortage in deliveries which occurred during certain months (July, August, and October) was due to plaintiffs' inability to get cars; that "during the period aforesaid, upon the Chesapeake & Ohio Railroad, the only common carrier transporting coal from the said mines, there existed and continued a great deficiency in coal cars," etc. After the contract had been in force for about 5½ months, defendant wired plaintiffs: "Stop all shipments to us until further notice. See letter." In the letter defendant called plaintiffs' attention to their failure to ship the specified amounts of coal and complained of the quality delivered. It also demanded a reduction in price and notified plaintiffs to make no further shipments.

All the coal shipped up to this time had been accepted and paid for.

While further negotiations were had, both parties refused to yield from the positions by them taken, and this litigation followed. That is to say, plaintiffs refused to reduce their price, insisted that the coal delivered was of the grade specified, and that their failure to ship the designated quantity was due to car shortage. Defendant refused to accept more coal unless the price was reduced, and insisted that it had been obliged to purchase coal elsewhere. Thus it will be seen that one of the contested issues on the trial arose over plaintiffs' failure to ship 1,500 tons for each of certain months.

Error is assigned over the rejection of evidence offered by the plaintiffs tending to establish a car shortage. One Hodges who described himself as "the statistician in charge of coal car accounts" of the Chesapeake & Ohio railroad, testified that his company published monthly bulletins showing the allotment of cars to coal companies for the succeeding 30 days. This allotment was based upon the affidavits of the shippers and represented the latter's requirements. From the records before him, he tes-

tified to the plaintiffs' allotments. He was then asked to state the number of cars furnished during the months wherein plaintiffs failed to ship defendant the 1,500 tons of coal. The objection to this question was sustained, but not until the witness had testified that the record which he had in his possession was made up in his office, and was based upon reports sent him, in the due course of business, by one Malley, an employee of the railway whose position was described as "a local car distributor." Malley sent daily reports, which showed the "ratings of the mines, cars, orders, supplies, loadings, hours worked and cars billed east and west." These daily reports were preserved and on file with the Chesapeake & Ohio Railway Company. In the due course of business the reports were transferred into permanent book form, and the witness had this record, but not the daily mine reports, in court.

The materiality of this evidence is not denied. Defendant, however, questioned its competency, and on this ground the court excluded it. The rules governing the admissibility of evidence of this character have of necessity changed somewhat with the changing methods and growth of business houses. The definition of a book of original entry is doubtless more inclusive today than it was a century ago. Yet we doubt whether, had the complexity and size of modern business transactions existed then, the more restricted definitions would have been pronounced. In other words, the courts made the exception fit the existing needs. At first they were dealing with a situation where the number of employers was few, the transactions simple, and the field of business activity limited. It was not so difficult, at least not impossible, to secure the best evidence—the testimony of an employee who conducted the entire transaction. With the increase in the territorial range of business as well as in the number of employees, the difficulty of producing all the witnesses who could give first hand information increased. In some instances, these obstacles became insurmountable. It was this situation which led to what is generally called an exception to the rule excluding hearsay evidence. But, in creating the exception, the court so far as possible safeguarded the litigants from the dangers incident to the reception of hearsay evidence.

. The same reason that called for the exception, to wit, necessity, led courts later to free the rule of some of its earlier restrictions. Wisconsin Steel Co. v. Maryland Steel Co.

(C. C. A.) 203 F. 403; Givens v. Pierson's Adm'x, 167 Ky. 574, 181 S. W. 324, Ann. Cas. 1917C, 956; Squires v. O'Connell, 91 Vt. 35, 99 A. 268; Morse Dry Dock & Co. v. Susquehanna S. S. Co. (C. C. A.) 289 F. 436; E. I. Du Pont De Nemours & Co. v. Tomlinson (C. C. A.) 296 F. 634; Banner Grain Co. v. Burr Farmers' Elevator & Supply Co., 162 Minn. 334, 202 N. W. 740; Cascade Lumber Co. v. Ætna Indemnity Co., 56 Wash. 503, 106 P. 158; Barclay v. Deyerle, 53 Tex. Civ. App. 236, 116 S. W. 123. Jones in his work on Evidence, volume 3, p. 569, announces the rules as follows:

"The former strict idea of what constituted original entries has been modified to fit the necessities of new business conditions. Inasmuch as under the modern methods of extensive business houses the information relative to the transactions constituting the accounts must pass through various hands before being permanently recorded, some system of temporary memoranda preparatory to the permanent records is necessary to insure convenience as well as accuracy. It would be impracticable to preserve for any great length of time the tags, slips, or tokens constituting such original memoranda, and impossible, in view of the changing of employees, to obtain the testimony of the person who made the temporary memoranda or conducted the transaction. Hence, following the rule of necessity, the courts do not regard such temporary memoranda as the originals, but look to the permanent records as such original entries when properly verified by a suppletory oath. In this particular, every case must be made to depend very much upon its own peculiar circumstances, having regard to the situation of the parties, the kind of business, the mode of conducting it, and the time and manner of making entries."

[1] To bring the evidence within the exception (relevancy being shown) there must appear (a) practical necessity for its introduction; and (b) circumstantial guaranty that the transaction occurred as recorded.

[2] In the present case, there is little or no question respecting the circumstantial guaranty that the transaction occurred as recorded. The railroad company was required under general rules and regulations prescribed by the Interstate Commerce Commission to keep a record of facts such as here sought. It was, however, under a special obligation at this time, when the car shortage was so acute, to preserve accurately its record of car service. The Commission had announc-

ed specific rules and regulations (received in evidence herein) respecting coal cars and had appointed a special representative to see that these rules were strictly followed. The railroad company was likewise liable to all shippers for failure to deliver cars unless it could furnish satisfactory evidence of its inability to meet car demands. It was not interested in the present controversy. These facts gave satisfactory assurance of the accuracy of the records.

The evidence tending to show a practical necessity for the introduction of this evidence was not, in view of the objection made, as clear as it might have been. There was, however, a sufficient showing to justify its reception. Plaintiffs operated and shipped from two mines, located at different places. Coal was shipped to various customers other than defendant. The period of time during which shipments were made covered approximately six months, during the greater portion of which time there was a car shortage. It is not easy to see how employees of the mines could have testified respecting the total number of cars furnished by the carrier for any one month. Certainly it would have necessitated the presence of a multitude of witnesses and their testimony would not have been as reliable as the books of the carrier. We conclude that the court erred in rejecting this evidence.

[2] Another assignment of error, which we discuss because of the possibility of its recurrence on a retrial, deals with the court's charge to the jury. The court charged: "There are certain provisions in this contract which I desire to call your attention to at this time. The first is the grade of coal. Under the subtopic, 'Grade of coal to be furnished under contract, paragon or Cub Fork egg (in case shipper is unable for any reason to deliver the full tonnage in egg size, mine run will be accepted).' That refers to the paragraph of the contract that I instructed you that the burden is upon the plaintiff, if it is unable to furnish egg coal, or you find that it did not furnish egg coal in its entirety. If you find that the plaintiffs furnished both egg coal and mine run, then the burden is upon the plaintiffs to show why they did not furnish egg coal, before they would be relieved from that provision of that contract."

Plaintiffs excepted, saying: "The defendant, by accepting the shipments, waived any right it might have had to rescind the contract for plaintiffs' failure to ship the stipulated kind of coal." The evidence was such, we think, as to conclusively establish a waiver of defendant's right to rescind because of the quality of the coal shipped. Not only was there an acceptance of the coal shipped, but defendant's letters leave no room for doubt respecting this issue. In view of the instruction given, the jury might have concluded therefrom that defendant's termination of the contract was justifiable, because of an alleged breach on plaintiffs' part which defendant had waived.

We have examined the other contentions made in this court by counsel for both sides, but do not find they require special treatment in this opinion.

The judgment is reversed, with directions to grant a new trial.