IN RE NEW ENGLAND POWER CORPORATION.

Special Term at Montpelier, March, 1931.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ., and GRAHAM, Supr. J.

Opinion filed October 6, 1931.

454

*Ernest W. Gibson, Jr.*, State's attorney, for the State.

*Homer L. Skeels* and *F. J. Dunn* (of Boston, Mass.), for the appellees.

POWERS, C. J. The New England Power Corporation brought a petition to the Public Service Commission seeking consent to and approval of an issue of common stock to an amount sufficient to purchase the assets of the South Vernon Light & Power Company, the Vernon Electric Light Company, and the Vermont assets of the Fall Mountain Electric Company. Concurrently therewith, the South Vernon Light & Power Com-

pany and the Vernon Electric Light Company, brought petitions to said Commission seeking general good certificates evidencing approval of the sale of all their assets to the New England Power Corporation, and the Fall Mountain Electric Company brought a like petition seeking such a certificate covering its Vermont assets. Upon due notice and hearing all of these petitions were granted. The state appeared at the hearing by the State's attorney of Windham County, and brings the controversy here on appeals and exceptions.

It appears that the Commission had designated the firm of Barker & Wheeler, of New York, to inspect and appraise the properties which the New England Power Corporation proposed to acquire. Harry Barker of that firm was a witness at the hearing before the Commission. From his testimony it is shown that, at the time his firm was engaged in the work of appraising the properties above referred to, it was also doing work in New Hampshire for the Grafton County Electric Light & Power Company, a subsidiary of the New England Power Association, of which the New England Power Corporation is also a subsidiary. That during the time aforesaid, his firm was doing work for the Grafton Electric Light & Power Company in the state of New Hampshire, by direct employment, which Company is a subsidiary of the New England Power Association. That while his firm was appraising the Fall Mountain Electric Company, he was doing work for the Connecticut River Power Company by direct employment, which corporation is a subsidiary of the New England Power Association. As the case is presented, we take it that Barker & Wheeler is a firm of experts engaged in the examination and appraisal of public service corporations and their assets, and that all the work herein referred to as done by it was in that line.

The statute under which the firm was designated as above, No. 85, Acts of 1925, authorizes the commission to select "disinterested persons" to examine into and testify as to such matters as were involved in the hearing above referred to. The foregoing facts being developed, the State objected to the testimony of Barker on the ground that the appointment of his firm was not authorized by the statute because it was not composed of "disinterested persons." This objection was overruled, and the State excepted.

We must assume that the Legislature used the word "disinterested" advisedly. So the Commission was bound to give it effect. Accordingly, the first question before us is: Was the firm of Barker & Wheeler so interested as to be disqualified to act under the statute?

 Ordinarily, it is a pecuniary interest that disqualifies one to act in a judicial or quasi-judicial capacity. But under the statute referred to, it must be taken that the Legislature intended that the persons employed by the Commission should be, not only free from pecuniary interest in matters concerned in their work, but should be free from such bias or prejudice as would be likely to affect their conclusions. The character and importance of their duties and the consequences that flow therefrom demand this much; and, too, they demand that the Commission, in making its selection of such persons and in passing upon their work, shall exercise caution and sound judgment. It may be assumed that a servant or employee of a public service company would not be eligible to designation. But it is not to be taken here that this firm of Barker & Wheeler was in the regular employment of any of the corporations. The fact is to the contrary. It was a public appraiser serving any who from time to time sought its assistance. We cannot accept the idea that it was intended that one so engaged should be disqualified under the statute by the mere fact that he had been employed in that capacity on one or more occasions by a subsidiary corporation, or by the very corporation making application to the Commission. Such fact might affect the weight to be given to his testimony, but it would not necessarily disqualify him. Ordinarily, the question of interest or lack of it is one of fact, and the burden of proof is on him who brings it in question. There being no pecuniary interest involved, it was so here. In the first instance, it was for the Commission to decide. *National Fire Ins. Co.* v. *O'Bryan*, 75 Ark. 198, 87 S. W. 129, 5 Ann. Cas. 334.

The State relies upon *Coon* v. *National Fire Ins. Co.*, 126 Misc. Rep. 75, 213 N. Y. S. 407, which is a case wherein an insurance policy provided for the appointment of "disinterested" referees in case of loss. The case falls short of being in point. There, the referee, Willard, had been a regular employee of the defendant and other insurance companies for several years, and there was evidence of misrepresentations inducing his selection.

We agree, however, that the insurance cases present a question quite like the one before us. And while the Coon Case may lend some support to the State's claim, it is generally held that the mere fact that an insurance adjuster has, on one or more occasions, acted for the company concerned, does not disqualify him on the ground of interest. 14 R. C. L. 1359; *Northern Assurance Co.* v. *Melinsky*, 237 Mich. 665, 213 N. W. 70, 71; *Levin* v. *Northwestern Nat. F. Ins. Co.* (C. C.), 185 Fed. 981; *Van Winkle* v. *Continental Fire Ins. Co.*, 55 W. Va. 286, 47 S. E. 82; *Glover* v. *Rochester-German Ins. Co.*, 11 Wash. 143, 39 Pac. 380; *Messler* v. *Williamsburgh City F. Ins. Co.* (R. I.), 95 Atl. 601; *Stemmer* v. *Scottish Ins. Co.*, 33 Ore. 65, 49 Pac. 588, 53 Pac. 498. In *Bullman* v. *No. British & Mercantile Ins. Co.*, 159 Mass. 118, 34 N. E. 169, it was claimed that a reference of the amount of the loss to three disinterested persons was, under the terms of the policy, a condition precedent to a right of action thereon, and that no such reference had been made, because Palmer, one of the referees who acted, was not disinterested. It appeared that he then held as collateral for an immature note indorsed by him a large note against the insured, which note was secured by a second mortgage on buildings destroyed by the fire. It was held that he was not, as matter of law, thereby disqualified.

So, too, it is held that a lawyer is not disqualified within the meaning of the law of malicious prosecution making the advice of a "disinterested attorney" a defense to the action, by the mere fact that he represented the defendant in other litigation. *Kroger Grocery & Baking Co.* v. *Hamlin*, 193 Ky. 116, 235 S. W. 4, 6.

Our highway cases are in harmony with these views. In *Gray* v. *Middletown*, 56 Vt. 53, the question was as to the qualification of one Jennings to act as a "disinterested freeholder" in a highway case. There, as here, the proceedings were not *inter partes;* there, as here, the person whose qualification was in question was merely the agent of the authority making the appointment; and there, as here, the appointing authority was not bound by his action, but could accept or reject his conclusions. It was held that Jennings was not disqualified.

There is nothing before us to indicate that Barker or his firm was in fact interested in the matters before the Com-

mission. His judgment, his integrity, and his fairness are unchallenged. On the record, we cannot say that the ruling of the Commission was erroneous.

 It appeared from Barker's testimony that the survey and valuation of the assets of the Fall Mountain Company were based in part upon the work of certain employees of Barker & Wheeler carried on according to a plan laid down by the witness, and that such work was inspected and checked by the witness and others. It also appeared that the witness was at the property during the progress of the work and had an opportunity to become somewhat acquainted with it. When an exhibit embodying this survey and valuation was offered in evidence, the State objected on the ground that it was based on hearsay. This objection was overruled and the State excepted.

There is nothing in the statute creating our Public Service Commission and prescribing its duties that specifies the kind of evidence upon which it shall base its decrees. There is nothing therein requiring its members to be trained lawyers. And it is a well-known fact that men of affairs untrained in the law are frequently called to serve on this Commission. In these circumstances, it must be held, as it is generally, that, while it cannot dispense with those fundamental rules of evidence that are essential to a fair and impartial trial of the questions before it, yet from the purposes of its creation and the nature of its functions it is necessarily endowed with a liberal discretion in passing upon the competency of tendered evidence. *Garson* v. *Steamboat Canal Co.*, 43 Nev. 298, 185 Pac. 801, 1119; *Schuylkill Ry. Co.* v. *Pub. Ser. Comm.*, 268 Pa. 430, 112 Atl. 5. Consequently the admission by it of incompetent evidence is not necessarily reversible error. *No. Pac. R. R. Co.* v. *Dept. of Public Works,* 268 U. S. 39, 69 L. ed. 836, 841, 45 Sup. Ct. 412; nevertheless, its findings and decrees must be based upon evidence sufficient, in amount and character, to satisfy a reasonable and impartial mind. *City of Erie* v. *Pub. Serv. Comm.*, 96 Pa. Supr. Ct. 42; *Schuylkill Ry. Co.* v. *Pub. Serv. Comm.*, 71 Pa. Supr. Ct. 204.

Without attempting to justify the admission of the exhibit in question on strictly legal grounds, we call attention to the fact that the exigencies of modern business have called for a liberalization of the technical rules of evidence in cases like this, and that the courts have yielded to this demand to an appreciable extent. Our own cases reflect a marked tendency to a

relaxation of the hearsay rule in such circumstances as are here presented. And the question whether the person actually doing the work and making the record shall be required to attend and testify has come to be largely a question of expediency to be decided by the trial court. *Squires* v. *O'Connell,* 91 Vt. 35, 39, 99 Atl. 268, and cases cited.

██ We are not now called upon to attempt to delimit the discretion of the Commission in passing upon the admissibility of evidence. The ruling before us was well within it. The manifest purpose of the statute is to provide the Commission with expert advice and assistance in determining the value of the assets of a public utility. Whether or not such advice is to be accepted at its face value is a question for the Commission to decide. It is not bound to accept it at all. In the exercise of a sound and impartial judgment, it may reject it in whole or in part. When the firm of Barker & Wheeler was designated as above, the Commission understood, of course, that much of the field work would have to be done by employees of the firm. The Commissioners might well treat the designation as including such of the servants and employees of the firm as were reasonably required to gather and present the data necessary to an expert and reliable appraisal. And so far as such work, examined, supervised, and approved by Barker, himself, appealed to them as helpful and reliable, it was properly considered and accepted. See *Lindsay* v. *Pub. Util. Com.,* 111 Ohio St., 6, 144 N. E. 729, 733.

*Exceptions overruled. Appeal dismissed. Let the result be certified to the Public Service Commission.*