ALEXANDER LAFERRIERE *v.* WARREN GRAY.

February Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 4, 1932.

*Searles & Graves* for the defendant.

*S. E. Richardson* and *Porter, Witters & Longmoore* for the plaintiff.

MOULTON, J.   This action is the outcome of a collision between the plaintiff's motorcycle and the defendant's automobile

at the junction of Hastings and Railroad Streets in the village of St. Johnsbury, and, having resulted in a verdict for the plaintiff in the trial court, is before us on the defendant's exceptions.

The exact place of the accident was in dispute, and the first group of exceptions briefed by the defendant have to do with the admission of evidence offered by the plaintiff as bearing upon this issue. A civil engineer, called by the plaintiff, produced a blueprint map made from his survey of the general location of the accident, which was received in evidence without objection. He testified that just westerly of a certain catch basin there was a junction of the edge of the cement and an expansion joint in the cement which he marked "A." He was asked whether he measured from the point "A" to another point which was indicated to him on the occasion of his visit to the premises, and answered that he did. He was then asked to indicate the point to which he took the measurement, and, subject to defendant's exception answered that he marked it with the letter "B," to which exception was also taken. The next question was as to the distance between "A" and "B," and, again under exception, he answered that it was a little less than 60 feet. These three exceptions are briefed together, and the grounds so far as stated on trial are that the evidence was hearsay and a self-serving declaration by the plaintiff. But it was neither of these things. All the witness was asked to do was to indicate a certain point upon the map, for the purpose of giving its distance from another point which was not in dispute. Who his informant was, or what he said, did not appear, and, without further testimony showing the materiality of the point thus marked, the evidence would have been colorless. The fact that it was shown to him by someone merely identified it, and did not make his testimony objectionable as hearsay. As a matter of fact it was not the plaintiff who gave him the location of point "B," but a police officer who repaired to the scene of the accident shortly after it happened, and before the damaged motorcycle had been removed, and who, later in the trial, testified that he showed to the witness the spot where he found a pool of oil upon the cement, which was approximately at the point "B" as marked upon the map. It also appeared that this oil came from the motorcycle. That this evidence tended to show the place where the collision took place is too apparent

to require further discussion. The foregoing exceptions are not sustained.

■ Further on in the direct examination, the civil engineer testified that another point was indicated to him for purposes of measurement, and was asked "Where was that point with reference to point 'A' on this map?" Subject to exception because hearsay and immaterial, he answered that he measured from point "B" to a point northerly beyond the range of the map, where there were some large elm trees. The objection of hearsay is covered by what we have already said in dealing with the previous exceptions. If, as the defendant argues, the evidence was immaterial because the location of the elm trees was not shown to have any relation to the acts of the parties and was not otherwise identified, we fail to perceive wherein the defendant was prejudiced by the ruling, which must affirmatively appear if the error is to be sufficient to cause a reversal. *Higgins* v. *Metzger*, 101 Vt. 285, 298, 143 Atl. 394; *MacDonald* v. *Orton*, 99 Vt. 428, 431, 134 Atl. 599.

■ The same witness was permitted, subject to exception, to indicate another point on the map, which he marked "C," and which he testified had been shown to him at the same time as the exhibition of point "B." The objection was immateriality, but without examining the merits of the ground of exception, it is enough to say that if there was error in this respect, it is not shown to have been harmful. Consequently the admission of it does not require a reversal. *Fletcher* v. *Wakefield*, 75 Vt. 257, 263, 54 Atl. 1012.

The exception to the denial of the motion to strike out the testimony of the civil engineer concerning the location of the various points above mentioned is sufficiently answered by what has been said as to the foregoing exceptions. No reversible error appears.

■ The competency of the police officer to indicate upon the map the approximate point where he found the pool of oil was a preliminary question for the court to decide before receiving his testimony. *Shields et al.* v. *Vermont Mutual Fire Insurance Co.*, 102 Vt. 224, 246, 147 Atl. 352; *Cairns, Exr.* v. *Mooney*, 62 Vt. 172, 173, 174, 19 Atl. 225; *Andrews* v. *Aldrich*, 104 Vt. 235, 158 Atl. 676, 677. The witness was examined and cross-examined as to his understanding of the map and his

■

familiarity with the premises it represented, before the evidence was received. The fact that he was permitted to testify upon this point was an implied finding of his competency. *Squires* v. *O'Connell*, 91 Vt. 35, 43, 99 Atl. 268. This ruling is not revisable unless it appears from the evidence to be erroneous, or founded upon an error in law. *Shields et al.* v. *Vermont Mutual Fire Insurance Co., supra,* 102 Vt. at pages 247, 248, 147 Atl. 352. An examination of the transcript discloses evidence which supports the finding, and the defendant's exception to the admission, of the testimony is not sustained. *Raymond* v. *Sheldon's Estate,* 92 Vt. 396, 400, 104 Atl. 106; *Lincoln* v. *C. V. Ry. Co.,* 82 Vt. 187, 192, 72 Atl. 821, 137 A. S. R. 998; *Place* v. *Gr. T. Ry. Co.,* 80 Vt. 196, 204, 67 Atl. 545. The cases cited above have to do with the qualification of expert witnesses, but the principle is the same where the competency of a lay witness is in issue. *Andrews* v. *Aldrich, supra.*

■ ■ Several exceptions were taken to the argument of plaintiff's counsel, all of them involving essentially the same question. So far as appears by the transcript, all the objectionable statements were made following and connected with one another in the argument. Counsel stated that it was the duty of the plaintiff to turn to the right-hand side of Railroad Street when he reached the junction of Hastings and Railroad Streets, and in explanation of this claim, read to the jury a portion of No. 70, Acts 1925, § 68, subd. III: "All intersecting highways shall be approached and entered slowly and with due care to avoid accidents. In making a turn to the right into an intersecting highway vehicles shall keep to the center of both intersecting highways and close to the right-hand side." He then repeated the statement that it was the plaintiff's duty to cross to the right-hand side of Railroad Street. Both of the statements as to the plaintiff's duty were allowed under exception on the ground they were not the law. The exception to the reading of the statute was on the ground that it did not state the law completely and adequately as interpreted by this Court. It is open to serious doubt that these exceptions are available as specifically stating the grounds of the objections. *Usher* v. *Severance,* 86 Vt. 523, 530, 531, 86 Atl. 741; *Miles* v. *Fruit Co.,* 98 Vt. 1, 16, 124 Atl. 559. But however this may be, prejudice does not affirmatively appear, as it must if the argument is to

constitute reversible error. *Wittig* v. *Burnap*, 99 Vt. 340, 342, 132 Atl. 39; *Prouty* v. *Pellett & Skinner*, 96 Vt. 53, 57, 117 Atl. 373; *Button* v. *Knight*, 95 Vt. 381, 386, 115 Atl. 499; *Russ*. v. *Good*, 92 Vt. 202, 205-207, 102 Atl. 481; *State* v. *Warm*, 92 Vt. 447, 448, 105 Atl. 244, 2 A. L. R. 811. It is, of course, an impropriety for counsel to argue the law, or to read the law, to the jury. *Lewis* v. *Crane & Sons*, 78 Vt. 216, 220, 62 Atl. 60. The section of the statute as read was inapplicable to the situation. The plaintiff was not making a right-hand turn into Railroad Street, but was intending to proceed northerly along Hastings Street. It was not his duty to do more than exercise due care and to keep to the right of the center of the latter street when he saw the defendant's automobile approaching him in the opposite direction, so as to pass it without interference. Acts 1925, No. 70, § 68, subd. I. But during the colloquy which took place at the time, the presiding judge stated that he would give the law to the jury, and, addressing that body, said: "Of course, gentlemen, you are going to take the law from us and not from the lawyers." In connection with the remarks to which objection was taken, counsel said to the jury: "The court will tell you what the law is," and "Gentlemen, you always have that in mind, that what the court says to you about the law, and not what brother Graves or I say, is final and binding upon you." And in the charge the presiding judge, apparently to the satisfaction of the defendant, for no exception was taken, read the sections of the statute pertinent to the case. Under these circumstances we are unable to perceive that the defendant has been harmed by the argument. It is urged that the statute was read incorrectly, but this is apparently an afterthought for nothing was claimed for it on trial; and at any rate the variation was of too trifling and immaterial a nature to afford any reasonable ground for objection. *Carleton* v. *Fairbanks & Co.*, 88 Vt. 537, 554, 93 Atl. 462.

Exceptions were taken to certain instructions to the jury concerning the doctrine of the last clear chance. It is not claimed that this rule of law was incorrectly stated, but the objection is that it was inapplicable to the evidence in the case.

The most recent statement of this doctrine to be found among our decisions is in *Lachance, Admr.* v. *Myers*, 98 Vt. 498, 505, 129 Atl. 172, 174, where it is said that it "presupposes a perilous

situation, created or existing through the negligence of both plaintiff and defendant, but assumes that there was a time after such negligence has occurred when the defendant could, and the plaintiff could not, by the use of the means available, avert the accident. In such case, the negligence of the parties creating the situation is regarded as remote and that of the defendant in not averting the accident, after the peril is or should have been discovered, becomes the sole proximate cause of the injury.''

Taken in the light most favorable for the plaintiff, the evidence tended to show the following facts: The parties were proceeding in opposite directions on Hastings Street, the plaintiff from the south and the defendant from the north. When the former reached the junction where Railroad Street branches towards the southeast, he saw the defendant's automobile about 100 feet away from him. At a point about 15 feet north of a guard rail at the north end of a small grass plot at the intersection, he turned to his right, and, as he did so, he observed the defendant's automobile ''straddling'' the white line in the center of Hastings Street. The defendant was, at this time, making a left-hand turn into Railroad Street. The cement roadway is wider at that point, since a triangular portion of Railroad Street joins and extends along the easterly side of Hastings Street because of the acute angle at which the two highways meet each other. Supposing that the defendant would keep on his own right the plaintiff continued to turn to his right until he was on the right-hand side of the cement on that part of Railroad Street to which we have referred. The defendant, however, made a sharp turn to the left, and although the plaintiff made an effort to escape by heading across the road towards the field on his right, the automobile struck the left side of the motorcycle when it was 3 or 4 feet from the edge of the cement, and the injuries were inflicted. The plaintiff was driving in second gear at the rate of 15 to 20 miles an hour, and could have stopped within 3 feet. The defendant's speed was about the same, and his car stopped within 15 feet after he first applied his brakes, which were in good order and had been relined and tested about 3 weeks previous. At the point where the defendant was when the plaintiff made the turn to the right, the cement was about 35 feet wide and the automobile was about 15 feet from the easterly edge which

was on the defendant's left. There was more room on the defendant's right than there was on his left, and the cement roadway grew wider towards the south until it became about 50 feet in width at the north end of the grass plot which we have mentioned. There was no car or other obstruction on the defendant's right. The place of the accident was 35 to 40 feet northerly from the north end of the grass plot. The defendant's automobile stopped after the collision with its left front wheel off the cement on the easterly side of Railroad Street, and it was pointed in a southeasterly direction.

The defendant argues that if the plaintiff, after crossing to the right of the center of Hastings Street, had kept straight on, and had not continued his turn until he entered Railroad Street, the accident would not have happened, and claims from this that his negligence was operative up to the instant of impact and so was a part of the proximate cause of it. But assuming that he was negligent in so turning, or in failing to stop before doing so, the defendant's conclusion does not necessarily follow. After the plaintiff had entered Railroad Street, crossing the path of the defendant's automobile, the jury might on the evidence have drawn the inference that it was no longer in his power to get out of the defendant's way if the latter continued to bear to his left, while the defendant by keeping to his right had the opportunity to avoid the accident. There was ample room, as the evidence tended to show, for him to do this. There was evidence, therefore, that the time came when the plaintiff was powerless to avert the collision while the defendant was still able to do so. Under these circumstances, the last clear chance doctrine was properly submitted to the jury. See *Lachance, Admr.* v. *Myers, supra.*

An exception was taken to the allowance of an argument by plaintiff's counsel concerning the same doctrine, but it is covered by what has already been said.

*Judgment affirmed.*