## STATE *v.* ROBERT WARM.

### February Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, J.J.

Opinion filed November 11, 1918.

*Criminal Law—Refusal of Instructions—New Trial—Qualification of Juror—Betting on Result of Trial.*

In a criminal prosecution, where there was evidence upon which the jury could find the respondent guilty, although the evidence as to who committed the crime was conflicting and circumstantial, a motion by the respondent for a directed verdict was properly overruled.

An exception will not lie to remarks made in argument by counsel for the State which, taken by themselves, appear unwarranted and unfair, where the court treated them as made in reply to statements of respondent's counsel, and where prejudicial error is not shown by the bill of exceptions which is made controlling on that question.

An exception will not lie to the failure of the court to comply in terms with requests to charge, where the court in its own way charged substantially in accordance with the requests.

On a petition for a new trial in a prosecution where respondent was convicted of manslaughter, on the ground of the disqualification of a juror, where it is found that before the trial a juror who sat on the case wagered the cigars that the respondent would be convicted, a new trial will be granted without inquiring whether or not the result of the trial was in any measure affected thereby.

In such case, the amount of the wager is immaterial, the only question at stake being the due administration of justice.

INDICTMENT FOR MURDER. Plea, not guilty. Trial by jury at the September Term, 1917, Franklin County, *Waterman* C. J., presiding. Verdict, guilty of manslaughter, and judgment thereon. The respondent excepted. The respondent subsequently brought a petition for a new trial on the ground of the disqualification of a juror. The opinion states the case.

*C. G. Auslin & Sons* for the respondent.

*W. R. McFeeters,* State's Attorney, and *R. E. Brown* for the State.

HASELTON, J.   At the September Term, 1917, of the Franklin county .court, Robert Warm was tried for the murder of Jennie Hemingway, August 12, 1917, and was found guilty of manslaughter.   Judgment on the verdict was rendered, sentence was imposed, and Warm is now in confinement.

We have here a bill of exceptions brought by the respondent and a petition for a new trial.· In the view we take of the petition for a new trial, we shall not discuss the exceptions at length.

At the close of the evidence the respondent made a motion for a directed vedict in his favor, on the ground that the State had not introduced evidence fairly and reasonably tending to fasten guilt upon him.   This motion was overruled, and the respondent excepted.

A careful reading of the entire transcript shows the evidence as to who committed the crime to have been conflicting and circumstantial, but we agree to the contention of the State that the jury had evidence before it upon which it could find the respondent guilty.

The respondent excepted to some remarks made in the argument in behalf of the State.   Some of these remarks, taken by themselves, appear unwarranted and unfair, but the court treated them as made in reply to statements of the respondent's counsel, and the narrative contained in the bill of exceptions is such that prejudicial error is not shown.   The argument of the respondent's counsel .does not appear in the transcript; and while the transcript is made controlling as to matters appearing therein, the bill of exceptions is expressly made controlling as to statements of fact not appearing in the transcript.

The respondent presented several requests to charge, and excepted to the failure of the court to comply in terms with requests 1, 4, and 6.   These requests related to the doctrine of presumption of innocence, burden of proof, and reasonable doubt, and particularly to their application in a case standing on circumstantial evidence.   However, we think that an analysis of the charge shows that the court in its own way and in fitting

language charged substantially in accordance with the requests. No error appears here.

After verdict the respondent moved that it be set aside for reasons already considered, and on the further claim that it appeared that the jury acted hastily and with passion and prejudice. This motion was overruled, and in the action of the court in that regard there appears no abuse of discretion.

The petition for a new trial brought to this Court, goes upon two grounds; newly discovered evidence and the disqualification of one of the jurors, C. C. Martin, to sit in the case, a disqualification which came to light only after the trial of the case was ended. This juror resided in Montgomery. William Daniels of that town makes affidavit that before the trial Martin said he believed Warm was guilty, knew he was guilty, offered to bet the cigars that Warm would be found guilty, and did make such a wager with Daniels, Martin wagering that Warm would be found guilty, and Daniels wagering that Warm would be found innocent. Joseph LaFrank, road commissioner, makes affidavit that a few·days after the trial was over he heard Martin demand of Daniels the payment of the wager. Edmos Larivee makes affidavit to the same affect, and Wallace Lumbra and Elias Roberts make affidavits of like import.

The State took counter affidavits of these men, and LaFrank, Lumbra, and Roberts make affidavit that the talk in which Martin demanded of Daniels payment of the wager was of a jovial character. Larivee's counter affidavit is to the effect that he heard the bet, and that it was the other way; Martin betting that Warm would go free. Larivee's affidavits are unreliable, and really count for nothing. The counter·affidavit of Daniels was taken by the State. In it Daniels deposes that Martin said he knew well enough that Warm was guilty. Daniels said that, so far as he was concerned, he was in earnest in respect to the wager, as he believed Warm was innocent, would have bet the cigars, or would have bet a dollar. However, he says he never dreamed the bet was coming up to hurt Martin, and that no doubt the matter was all fooling. Previous to the wager he talked with Martin about the case right along as the newspapers came out, and their divergent views, based on what they read, led to the wager.

In this state of the affidavits of others we turn with interest to the counter affidavit of the juror himself taken by the State,

for an unqualified denial by Martin of the subject-matter of the other affidavits would go far to sustain the contention of the State. Juror Martin makes affidavit that at the time he was examined on the *voir dire* he had no recollection of discussing the death of Jennie Hemingway with Daniels, nor of making any wager with regard to parties concerned. He does not deny that he sat in the case with a consciousness that he had wagered that Warm would be convicted, but says that he tried the case fairly upon the evidence given in court and the charge as he understood it, and without reference to anything that he had heard, read, said or done theretofore. He does not deny that he made the wager referred to, but says that, if any wager was made, it was merely a joking bet, not based upon anything tangible, and promptly forgotten. He further says that, after he returned home from the trial, Daniels was joked about a wager, which the latter had made and lost, on the weight of horses, and that, if there was ever any talk about the wager in question, it was then had; that the existence of such a wager was never mentioned again; that it was never paid to him nor demanded by him.

Now if he didn't remember making the bet, he didn't remember forgetting it, nor that it was of a joking character. And if he didn't remember that there was any talk about it after the trial, he didn't remember the connection of the talk with talk about another wager. We are obliged to say that the affidavit of juror Martin is evasive and lacking in candor, and we find on the affidavits of others that he made the wager that Warm would be convicted. Very shortly thereafter he sat as one of the jury that convicted Warm. The counter affidavits, giving color to the claim that the wager was of a joking character, are without weight. Many people regard betting as fun, and the fact that the juror regarded it as a joke to bet on the conviction of a man charged with murder does not commend him to us as a man fit to be juryman in a case in which he had made that kind of a wager.

A grave question of public policy is here involved and it admits of but one answer. The amount of the wager in this instance is immaterial to the answer. Courts will not consider how large a wager must be to disqualify the wagerer. Public policy will not permit verdicts to stand which are rendered by jurymen who have bet on the issue, be the stake great or small. It is not for us to inquire whether or not the result of the trial was in any measure due to the situation that existed. The due

administration of justice is the question at stake. *Austin & Mc-Carger* v. *Langlois*, 81 Vt. 223, 69 Atl. 739; *Moore's Admr.* v. *Cross*, 86 Vt. 148, 84 Atl. 22; *In re Ketchum*, 92 Vt. 281, 102 Atl. 1032.

The conclusion reached makes it unnecessary and inadvisable to comment on the newly discovered evidence as set forth by petition and affidavit. On the new trial which public policy demands, such evidence, and all available evidence, whether favorable or unfavorable to the respondent, will stand for careful, impartial, and solemn consideration.

*Petition for new trial granted.*