**Brian J. COREY, Petitioner–Appellant,**

v.

**DISTRICT COURT OF VERMONT, UNIT # 1, RUTLAND CIRCUIT, Respondent–Appellee.**

No. 1377, Docket 90–2026.

United States Court of Appeals, Second Circuit.

Argued May 25, 1990.

Decided Oct. 22, 1990.

Barry E. Griffith (Robert Reis, Rutland, Vt., of counsel), for petitioner-appellant.

James P. Mongeon, Rutland, Vt., for respondent-appellee.

Before VAN GRAAFEILAND, MESKILL and WALKER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Vermont, Billings, C.J., dismissing appellant's petition for a writ of habeas corpus alleging that the State of Vermont is barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution from pursuing a retrial after a *sua sponte* declaration of a mistrial by the state court.

Reversed and remanded.

This case presents, to say the least, a remarkable set of circumstances. Brian J. Corey shot and killed Lorne Greene on November 2, 1985. Corey was charged in the state court of Vermont with murder in the first degree in violation of 13 Vt.Stat. Ann. § 2301 and aggravated assault in violation of 13 Vt.Stat.Ann. § 1024(a)(2). Corey claimed he shot Greene in self defense. While the jury was deliberating, a juror knocked on the jury room door and asked the sheriff who opened the door how far 92 feet was. The evidence at trial indicated that Corey had shot his victim from that distance. The sheriff began pacing off the distance down the hallway while some jurors watched.

The trial judge was alerted to the situation and quickly directed the jurors back into the jury room. After consulting with counsel in chambers, the judge gave a curative instruction to the jury. The jury then returned to its deliberations, and counsel and the judge again met in chambers to decide what to do in light of the incident.

After taking testimony in chambers from the sheriff, the judge raised the concern that, at least under Vermont law, a mistrial had to be declared. Corey's counsel did not object to the declaration of a mistrial, but contended that he was not waiving his client's double jeopardy protection. Still in chambers, the judge then stated that he was going to declare a mistrial but that it should be done in open court.

As the lawyers and the judge were preparing to go back into court, the jury reported that it had reached a verdict. Corey's counsel requested that the judge reconsider declaring a mistrial. The judge stated that he had declared the mistrial but would have the verdict reported only for the purpose of completing the record. The jury reported a verdict of not guilty on each count. Corey filed a post-trial motion for judgment of acquittal which was denied. Corey took an interlocutory appeal to the Vermont Supreme Court, which affirmed on the merits. *State v. Corey*, 151 Vt. 325, 561 A.2d 87 (1989).

Having exhausted his state remedies, Corey then filed this petition for a writ of habeas corpus in federal district court. The district court followed the recommendation of the magistrate to whom the matter had been assigned and dismissed the petition but granted a certificate of probable cause. Corey's retrial has been stayed pending the resolution of this appeal.

█ Because we believe that manifest necessity sufficient to escape the Double Jeopardy Clause's bar of a second trial did not exist once the trial judge learned that the jury had reached a verdict and that the verdict was not guilty, we reverse and remand to the district court with directions to grant the petition for a writ of habeas corpus.

█ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be put in jeopardy twice for the same offense. This prohibition not only includes an unequivocal bar against a sec-

ond trial after a judgment of acquittal, but also protects a defendant's " 'valued right to have his trial completed by a particular tribunal.' " *Arizona v. Washington,* 434 U.S. 497, 503 & n. 11, 98 S.Ct. 824, 829 & n. 11, 54 L.Ed.2d 717 (1978) (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). A second trial "increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." *Id.* 434 U.S. at 503–04, 98 S.Ct. at 829 (footnotes omitted); *accord Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). Because jeopardy attaches when the jury is empaneled and sworn, *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977), the Double Jeopardy Clause may preclude a second trial even if the first trial is terminated before the jury reaches a verdict.

■ If the trial court declares a mistrial without the consent of the defendant, a retrial is barred unless there was "manifest necessity" for the mistrial. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824) (Story, J.); *accord Washington,* 434 U.S. at 505, 98 S.Ct. at 830; *United States v. Arrington,* 867 F.2d 122, 125 (2d Cir.), *cert. denied sub nom. Davis v. United States,* — U.S. —, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). Justice Story's classic discussion of the manifest necessity standard bears repeating:

> [T]he law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

*Perez,* 22 U.S. (9 Wheat.) at 580. The test of manifest necessity thus is, by its nature, an elusive one, incapable of any mechanical formulation and dependent on the specific factual and procedural context of each case. *See Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973).

The paragon examples of mistrials that do not raise the double jeopardy bar include a deadlocked jury and the discovery during trial that a juror is biased against one of the parties. *See, e.g., Richardson v. United States,* 468 U.S. 317, 324–25, 104 S.Ct. 3081, 3085–86, 82 L.Ed.2d 242 (1984); *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963); *Wade,* 336 U.S. at 689, 69 S.Ct. at 837. In such circumstances, when unforeseen events intrude into the trial, the trial judge's decision whether manifest necessity exists to declare a mistrial should be afforded the "highest degree of respect." *Washington,* 434 U.S. at 511, 98 S.Ct. at 833; *accord Dunkerley v. Hogan,* 579 F.2d 141, 145 (2d Cir.1978), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). The accordance of deference to the trial court's determination, however, does not eliminate the need for careful appellate review. A trial judge "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971) (plurality opinion). An appellate court must therefore satisfy itself that the trial court exercised "sound discretion" in declaring the mistrial. *Perez,* 22 U.S. (9 Wheat.) at 580; *accord Washington,* 434 U.S. at 514, 98 S.Ct. at 834; *United States v. Grasso,* 600 F.2d 342, 343–44 (2d Cir. 1979).

There is no question in this case that the sheriff's conduct in response to the jury's question about the distance at which the shooting was alleged to have taken place was entirely improper and that some kind

of judicial response to it was appropriate. Moreover, the trial judge acted prudently by immediately giving a curative instruction to the jury, raising *sua sponte* the question of a mistrial, and conducting a hearing in chambers regarding the unfortunate events. However, the trial court erred, in our view, when it refused to take into consideration the change in circumstances resulting from the jury's announcement that a verdict had been reached.

After giving the curative instruction to the jury and taking testimony about the incident, the trial court raised the question of a mistrial because, under *State v. Demars*, 101 Vt. 229, 232, 143 A. 311, 312 (1928), it appeared that Corey would be entitled to a new trial if the jury reached a guilty verdict. Defense counsel did not initially object to the declaration of a mistrial, but rather took the position that, if a mistrial was declared, the Double Jeopardy Clause precluded any retrial. However, after the jury, unaware of the court's decision to declare a mistrial, notified the court that it had reached a verdict, defense counsel requested that the trial judge reconsider his decision to declare a mistrial and that the verdict be accepted. The trial judge declined to reconsider his ruling, but agreed to take the verdict "only to complete the record."

Although it declined to make its own motion for a mistrial, the state agreed with the trial court that the sheriff's misconduct required a declaration of a mistrial. The state did not, however, articulate any prejudice to its own case; in fact, it emphasized only that certain comments made by the sheriff appeared to be prejudicial to Corey. Even if we could imagine some prejudice to the prosecution, the burden remains on the state to establish the basis for a finding of manifest necessity. *See Washington*, 434 U.S. at 505, 98 S.Ct. at 830. At no point has the state, which is in the best position to discern the potential impact on its case of the sheriff's misconduct, attempted to meet this burden by claiming that its case was prejudiced. The state has merely relied on Vermont's prophylactic rule to justify affording it a second opportunity to put Corey on trial. This falls short of what the Double Jeopardy Clause requires.

The trial court's mistrial declaration was premised on the Vermont rule requiring a new trial for a defendant convicted after the jury, during its deliberations, is exposed to misconduct by the sheriff in charge of the jury even absent any showing that the jury was affected by the misconduct. *Demars*, 101 Vt. at 232, 143 A. at 312; *State v. Warm*, 92 Vt. 447, 450–51, 105 A. 244, 246 (1918). The Vermont rule is a prophylactic device designed to protect both the defendant's right to a fair trial and the public's interest in the sound administration of justice. It creates the presumption that a trial resulting in a guilty verdict was unfair any time that a sheriff engaged in the kind of misconduct that occurred in this case. However, this prophylactic rule does not, of its own force, dictate a finding of manifest necessity here. Under the circumstances of this case, in which the state has failed to articulate any prejudice to its own case and the jury's verdict was not guilty, the prophylactic rule must give way to the demands of the Double Jeopardy Clause.

The manifest necessity standard eschews a mechanistic approach. *See Arrington*, 867 F.2d at 125. Therefore, it is not enough to state that the trial court had declared a mistrial before the jury notified the court that it had reached a verdict. The jury was permitted to continue in its deliberations, unaware of the proceedings in chambers. When it reached its verdict, the trial judge was given a unique opportunity. An acquittal would reveal the absence of prejudice to the defendant. With no prejudice to the defendant and no articulation of any prejudice by the state to its case, the only remaining basis for a finding of manifest necessity would be the public interest in a trial free of even the perception of an inappropriate influence on the jury. Nevertheless, the limited public interest in having a trial free of *all* possible taint, whether prejudicial or not, by itself cannot overcome Corey's constitutionally protected "valued right to have his trial completed by a particular tribunal." *Wade*, 336 U.S. at 689, 69 S.Ct. at 837. The

trial judge therefore should have accepted the verdict. If the verdict were guilty, the court, concluding that the sheriff's conduct indeed could have prejudiced Corey, then could have properly ordered a new trial under Vermont law. Because the verdict was not guilty, however, there was at that time no manifest necessity for the mistrial.

A trial judge, when faced with misconduct that has the potential of influencing jury deliberations, would not always have to await the jury's verdict before declaring a mistrial. Depending on the circumstances, a trial judge, in the exercise of sound discretion, may be justified in aborting the trial and dismissing the jury before it reaches a verdict. For instance, if the misconduct occurs before deliberations have even begun or if there is a showing of prejudice to the prosecution, the trial court need not continue the proceedings. However, once the jury has reached a verdict before it is discharged and the prosecution does not claim prejudice, the context in which the decision regarding the existence of manifest necessity is made has substantially changed. The trial court no longer has to speculate about the possible impact of misconduct affecting the jury. The trial court can look to the verdict for an answer. The failure to take into account the jury's verdict in this case constitutes an abuse of discretion.

To hold otherwise would undervalue petitioner's interest in having the charges against him resolved once and for all by this jury without furthering any significant interest in the administration of justice. Whether manifest necessity exists depends on the circumstances extant at a particular moment in a trial. The trial judge apparently did not believe it existed when he first learned of the sheriff's misconduct. Otherwise he would have declared a mistrial instead of giving the curative instruction. However, he decided later that the conduct may have so prejudiced the defendant that a mistrial was required. Had the trial judge declared a mistrial then, before the jury reached a verdict, his decision might have survived a later double jeopardy challenge. However, after declaring a mistrial, but before the jury was dismissed, the trial judge learned that a verdict had been reached, a verdict, unbeknownst to him, of not guilty. At that moment in time manifest necessity no longer existed. The trial judge learned that the sheriff's error had not so prejudiced the jury as to deprive the defendant of a fair trial or a favorable verdict. The jury had not yet been dismissed. The trial judge could have and should have reconsidered his decision and accepted the verdict as he was requested to do by defense counsel.

### CONCLUSION

The state, having failed to articulate any prejudice to its case, did not carry its " 'heavy' burden of showing a mistrial to have been demanded by a 'high degree' of necessity." *United States v. Kwang Fu Peng,* 766 F.2d 82, 85 (2d Cir.1985) (quoting *Washington,* 434 U.S. at 505–06, 98 S.Ct. at 830–31). The trial court did not exercise sound discretion when it failed to take into consideration the changed circumstances resulting from the jury's having reached a verdict of not guilty before it was discharged. The state had one fair opportunity to prosecute petitioner. The jury acquitted him, and he should not be put in jeopardy a second time. We reverse the judgment of the district court below and remand with instructions to issue a writ of habeas corpus directing that Corey be discharged from custody and that there be no further prosecution of him for this offense.