**14**

UNITED STATES of America, Appellee,

v.

Eric MILLAN, a/k/a Eric Millan Colon, a/k/a Eric Colon, a/k/a Luis Colon, a/k/a Ejay, a/k/a Moe; Ralph Rivera, a/k/a TJ, a/k/a Rafael Rivera; Vincent Basciano, a/k/a Vinnie; Alfred V. Bottone, Sr., a/k/a Valentino A. Bottone, a/k/a Fat Al; Alfred Bottone, Jr., a/k/a Alfie; and Noel Melendez, Defendants–Appellants,

Myles Coker; Anthony Bottone; Albert Biscaglio, a/k/a Allie; John O'Rourke, a/k/a XYZ; Raimundo Hurdle, a/k/a Carlos Hurdly, a/k/a Panama; William Mendoza, a/k/a Willie; Porfipio Ortiz; Mildred Hernandez; Carmen Mendoza, a/k/a Belilo; Samanta Torres; and Larry Weinstein, a/k/a Larry Burns, Defendants.

Nos. 759, 760, 763, 747, and 748, Docket 93–1572L, –1573, –1574, –1575, –1576 and –1577.

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1993.

Decided Nov. 9, 1993.

Opinion Filed Feb. 17, 1994.

Gino Singer, New York, NY, for Defendant–Appellant Eric Millan.

Bettina Schein, New York, NY (Tom White, New York, NY, of counsel), for Defendant–Appellant Ralph Rivera.

Benjamin Brafman, New York, NY (Katherine Renee Frohock, Law Offices of Benjamin Brafman, New York, NY, of counsel), for Defendant–Appellant Vincent Basciano.

Maurice H. Sercarz, New York, NY, for Defendant–Appellant Alfred V. Bottone, Sr.

David Breitbart, New York, NY, for Defendant–Appellant Alfred Bottone, Jr.

Mitchell Golub, New York, NY, for Defendant–Appellant Noel Melendez.

Dietrich L. Snell, New York, NY, Asst. United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Roland G. Riopelle and Alexandra Rebay, Asst. United States Attorneys, of counsel), for Appellee United States of America.

Before: MINER and ALTIMARI, Circuit Judges, and ELFVIN, District Judge.*

MINER, Circuit Judge:

Defendants-appellants Eric Millan, Ralph Rivera, Vincent Basciano, Alfred Bottone, Sr., Alfred Bottone, Jr. and Noel Melendez, appeal from an Order entered on July 30, 1993 in the United States District Court for the Southern District of New York (Kram, J.), denying their motion to bar a retrial on various narcotic charges on the ground that a retrial would violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, 829 F.Supp. 620. On November 9, 1993, in an unpublished order, we affirmed the Order of the district court so that the retrial of the defendants could proceed as scheduled. We now set forth our reasons for that decision

## I. BACKGROUND

*A. General*

This appeal arises out of the prosecution of appellants Eric Millan, Ralph Rivera, Vincent Basciano, Alfred Bottone, Sr., Alfred Bottone, Jr., Noel Melendez[1] and several other defendants for their alleged role in a large-scale heroin organization responsible for distributing heroin in New York City under the brand name "Blue Thunder," by which the organization was known. Jury selection in the case began on March 1, 1993, and the parties delivered their opening statements on March 9, 1993. A series of unexpected events that form the basis for the declaration of a mistrial in this case occurred shortly after the trial began.

On March 12, the Government informed the district court that New York State Police Investigator Robert Robles, New York City Police Detective Jeffrey Beck and New York City Police Sergeant Joseph Termini, each of whom was a member of the New York Drug Enforcement Task Force (the "Task Force") and had participated in the Blue Thunder investigation, had been arrested on narcotics-related charges. The Government disclosed that the arrests of Agent Robles, Detective Beck and Sergeant Termini were based on a sealed complaint, dated March 2, 1993, that charged the officers with conspiring to distribute heroin between December of 1992 and March of 1993. Agent Robles, in particular, had been identified in the Government's opening statement as a reliable witness, who would testify at trial about his undercover drug purchases from one of the defendants.

In response to the Government's disclosure, Bottone, Jr., on March 15, 1993, moved

---

* Honorable John T. Elfvin, Senior United States District Judge for the Western District of New York, sitting by designation.

1. Appellant Melendez pleaded guilty on September 13, 1993 and withdrew his appeal.

in open court for dismissal of the indictment and, alternatively, for discovery of the investigative files relating to the investigation of Agent Robles and the other officers. At the direction of the district court, the Government, on March 17, 1993, submitted two *ex parte* affirmations under seal describing the participation of the arrested Task Force agents in the Blue Thunder investigation and the allegations of misconduct generated by the investigation of those agents. These affirmations indicated that the alleged misconduct by the agents occurred after the arrests of the defendants in this case. The district court ordered further disclosure on this issue and held a hearing on March 23 to determine the extent and duration of any police misconduct during the Blue Thunder investigation. At this hearing, the defense introduced evidence that Investigator Robles may have been engaged in misconduct during the course of that investigation.

On March 29, the district court issued an order addressing the defendants' request for dismissal of the indictment and other relief. The district court determined that there was no evidence that the alleged police misconduct had any relation to the Blue Thunder investigation and, accordingly, denied defense motions for (1) dismissal of the indictment; (2) suppression of certain wiretap evidence; (3) additional opening statements; and (4) appointment of a Special Prosecutor.

At a robing room conference on April 1, counsel for Bottone, Jr. indicated to the district court that he had discovered evidence of additional police misconduct related to the Blue Thunder case. Counsel alleged that $29,000 in cash purportedly seized from his client's business and $60,000 in cash purportedly seized from a car driven by Blue Thunder member Carlos Rivera was missing. After investigating these claims, the Government conceded that an undetermined amount of money that was seized from Rivera's car by Detective Beck and New York State Police Investigator Michael Brosnan never was vouchered as evidence and had disappeared.

### B. The April 15, 1993 Applications and April 16, 1993 Mistrial

On April 15, the district court heard further arguments regarding the disappearance of the money seized from Carlos Rivera. At this conference, counsel for Bottone, Jr. argued that the indictment should be dismissed due to prosecutorial misconduct and because the defense had no opportunity to cross-examine the Government witnesses in connection with the newly discovered allegations regarding the missing money. In the alternative, he argued that hearings on the issue of police misconduct should be reopened.

Counsel for Basciano requested "on behalf of my client and I assume on behalf of everyone," that the indictment be dismissed, the defendants be allowed to deliver new opening statements, the police misconduct hearing be reopened and a *Franks* hearing held.[2] After asserting that the indictment should be dismissed with prejudice, counsel stated "whether your Honor rules that the indictment be dismissed with or without prejudice is a completely separate issues [sic]." Paraphrasing the district court's own observation regarding the untenable situation created by the various allegations of corruption, Basciano's counsel remarked that, "[w]e're all walking on quicksand here," and argued that "[t]he difficulty we have is one thing leads to another. You have an evolving series of problems that are going to confront you with every witness." He further stated that he might later request the district court to stop the proceedings for a sufficient time to investigate the new evidence given by the Government.

Later that day, at a robing room conference, counsel for Basciano indicated to the district court that he was also requesting a mistrial, should the request for dismissal of the indictment be denied. At that time, the following colloquy occurred between the district court and counsel for the indicated defendants regarding the motion for a mistrial:

> [Basciano]: I am, on behalf of my client, asking for the declaration of a mistrial in the alternative if my application for dis-

---

**2.** *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The request for a *Franks* hearing presumably related to allegations that Agent Robles had supplied affidavits supporting crucial wiretaps in the case.

missal of the indictment is going to be denied.

[Rivera]: All defendants, your Honor.

[Bottone, Jr.]: I won't join in that application.

[Anthony Bottone]: Anthony Bottone joins in that application.

At this time, no other attorneys indicated an objection to the representation of Rivera's counsel that the motion for mistrial was on behalf of all defendants.

In an April 16 order, the district court declared a mistrial, primarily due to the fact that the "constant revelations" regarding police misconduct presented it and the defendants with "an untenable situation." In response to this decision, counsel for Bottone, Sr., who had not objected to the previous day's mistrial application on behalf of "all defendants," asserted that "there were some attorneys who moved for a mistrial and some who deliberately did not." He apparently was referring to himself as one "who deliberately did not." The district court then reminded counsel that "[j]ust one person demurred, and that was [counsel for Bottone, Jr.]." After stating that its determination was final, the district court dismissed the jury.

The district court on April 16th specifically found that there was "manifest necessity" for a mistrial. The reasons cited by the district court included: (1) that neither side could receive a fair trial because of the Government's comments in its opening statement indicating that it would rely substantially on the testimony of Agent Robles, which was now doubtful; (2) that, in light of the constantly widening scope of the Robles investigation, implicating more and more police officers, the already extensive amount of cross-examination of Government witnesses would not suffice to remove the prejudice to the defendants; (3) that, in light of the police misconduct in the case, the Government might be unable to establish a chain of custody over all of its evidence; and (4) that until the investigation of Agent Robles was further developed, the defendants would not be in possession of all impeaching and exculpating evidence. Finally, the court indicated that it had considered other alternatives besides a mistrial, such as a continuance, or a severance for the non-moving defendants, and found them to be impractical. In particular, a severance as to the defendants who did not consent to the mistrial was impractical in light of the number of defendants who had requested the mistrial.

In its decision of April 16th regarding the mistrial, the district court indicated that the Government appeared to be dragging its feet in its effort to uncover the full extent of the police misconduct. The district court cited the fact that the Government steadfastly denied, even in the face of compelling evidence to the contrary, that the police misconduct extended to the Blue Thunder investigation. Further, the district court evaluated documents relating to the misconduct investigation and found that the Government was making little effort to ascertain specifically the extent and duration of the corruption, had not adequately investigated the missing money, had not attempted to enter into a cooperation agreement with Robles and generally was not diligently pursuing the investigation. As a result of this perceived lackadaisical attitude, the district court was "troubled" that defendants might not yet be in possession of all impeaching and exculpating evidence. However, the district court concluded that the Government's conduct was "unconscious avoidance" that was not calculated to provoke a mistrial.

## C. The District Court's Double Jeopardy Decision

Following the declaration of a mistrial, defendants Basciano, Bottone, Sr., Bottone, Jr., Melendez, Millan, Rivera, Anthony Bottone, Jose Colon, Myles Coker, John O'Rourke, Samantha Torres and Larry Weinstein moved to preclude retrial of the case on double jeopardy grounds. In a July 30, 1993 Memorandum Opinion and Order, the district court denied the motion, finding (1) all defendants except Bottone, Jr. and Bottone, Sr. consented in the mistrial and were bound by that consent unless it was provoked by government misconduct which, the district court found, it was not; (2) that Bottone, Jr. certainly had objected to the mistrial and since Bottone, Sr. had at least objected after the

fact, it would simply recognize that some defendants had objected; and (3) that in any event, there was no double jeopardy since the mistrial was granted due to manifest necessity. The district court then expanded on its original determination of "manifest necessity" for granting the mistrial. Summarizing its findings, the district court held:

[T]he Court finds that the Government's improper opening statement intimating that Robles would be testifying at trial; inability of defense counsel to address the ongoing revelations of police misconduct through cross-examination; need for the Court to revisit prior rulings, recall witnesses and reopen hearings premised upon stale information; inability of the Government to provide the defendants with all impeachment material and aggressively pursue the corruption investigation while the Blue Thunder case remained pending; likelihood that the jury would not reach a proper verdict in light of these factors; and lack of viable alternatives to salvage the case, together, constituted manifest necessity for a mistrial.

The appellants appeal from this order.

## II. DISCUSSION

■ Millan, Rivera and Basciano contend that they did not consent to a mistrial "without prejudice," and the Bottones argue that they did not consent to the declaration of a mistrial at all. Absent a finding that the Government "goaded" the defense into moving for a mistrial, "principles of double jeopardy do not bar a second prosecution following a mistrial declared at the request of the defendant." *United States v. GAF Corp.*, 884 F.2d 670, 673 (2d Cir.1989); *see also Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). If the defendant does not consent or objects, a mistrial is nevertheless proper if there is "manifest necessity." *United States v. Per-*

*ez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *see also Illinois v. Somerville*, 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973). Because we conclude that the Government did not provoke a mistrial and the district court properly determined that there was manifest necessity for declaring a mistrial, the issue of the appellants' consent to the mistrial is of no moment, and we do not pause to address it.

### A. Government Misconduct

■ Millan, Rivera and Basciano argue that, notwithstanding their request for a mistrial, this request was the result of Government misconduct intended to provoke a mistrial.[3] This challenge is without merit.

■ When the Government engages in misconduct intended to provoke a mistrial, the Double Jeopardy clause protects the defendant from reprosecution. *Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088. The Supreme Court has made clear that mere "bad faith conduct" or "harassment" on the part of the Government is insufficient to preclude reprosecution; rather, the district court must determine if the prosecution actually intended to provoke a mistrial. *Id.* at 679, 102 S.Ct. at 2091; *see also United States v. Pavloyianis*, 996 F.2d 1467, 1474 (2d Cir.1993) (requiring "deliberate" prosecutorial misconduct). "Negligence, even if gross, is insufficient." *United States v. Huang*, 960 F.2d 1128, 1133 (2d Cir.1992). This standard "calls for the court to make a finding of fact." *Kennedy*, 456 U.S. at 675, 102 S.Ct. at 2089. Accordingly, the district court's finding that the Government did not intend to provoke a mistrial will not be reversed unless clearly erroneous. *See Pavloyianis*, 996 F.2d at 1475.

With these considerations in mind, it is apparent that the district court's finding that

---

**3.** At this point it should be noted that a panel of this Court has already partly reviewed this claim in a related appeal. In *United States v. Millan*, 4 F.3d 1038 (2d Cir.1993), defendants Millan and Rivera, appellants in this case, had been released on bail by the district court, pending retrial. In reviewing the question of whether continued detention of Millan and Rivera would exceed due process, this Court reviewed the Government's responsibility for the delay in this case and concluded: "The primary reason for the delay since March 1993 has ... been the government's failure to advise the court prior to the initial trial concerning the misconduct of certain of the agents who participated in the *Millan* investigation. *There is no suggestion that this failure was intentional....*" *Id.* at 1045 (emphasis added).

the Government had not engaged in intentional misconduct was not clearly erroneous. There is no indication that the Government actually was withholding any information concerning Robles' role in the Blue Thunder case once the police misconduct investigation came to light. The district court noted that the Government's actions in this case, at most, amounted to "unconscious avoidance" of any knowledge of police misconduct that could "infect" the Blue Thunder case. Our review of the record reveals nothing that substantively contradicts this conclusion. Even if the Government was less than diligent in its investigation of the alleged police misconduct, this negligence does not rise to the level of intentional conduct necessary to invoke the protections of the Double Jeopardy Clause. *Accord Pavloyianis,* 996 F.2d at 1474; *Huang,* 960 F.2d at 1133.

Furthermore, in both the April 16 and July 30 orders, the district court thoroughly reviewed the question of the Government's intent and concluded that "there is simply no evidence that the Government ... engaged in ... [deliberate conduct] to avoid an imminent acquittal." *Cf. Pavloyianis,* 996 F.2d at 1475 (double jeopardy not a bar to retrial where there was nothing in the record to indicate that the Government "engaged in misconduct with the intention of avoiding what [it] viewed as a likely acquittal"). At all times the Government maintained the position that it was prepared to go forward with the prosecution. In a memorandum of law, dated July 18, 1993 and submitted to the district court, the Government pointed out that the evidence against the defendants was "overwhelming" and certain to ensure their conviction, and, although the disclosure to the jury of Robles' alleged misconduct may have weakened the Government's case, it was of the belief that there was still ample evidence to guarantee a conviction. Therefore, we agree with the district court and conclude that the Government's actions were in no way motivated out of fear of the defendants' imminent acquittal.

In light of the substantial support in the record, we conclude that the district court did not clearly err in finding that the Government did not engage in misconduct intended to provoke a mistrial, and, accordingly, the arguments of Millan, Rivera and Basciano fail.

## B. *Manifest Necessity*

█ The Bottones argue that the district court erred in finding that there was manifest necessity to declare a mistrial over their objections.[4] We disagree.

█ It has long been settled that the constitutional prohibition against double jeopardy does not bar a second trial when the trial court has declared a mistrial based on "manifest necessity." *See Perez,* 22 U.S. at 580; *Somerville,* 410 U.S. at 461, 93 S.Ct. at 1069. Each case is judged on its own "particular facts," and a "trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." *Somerville,* 410 U.S. at 464, 93 S.Ct. at 1070. As the Supreme Court has noted, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

█ Since a trial judge is best situated to decide intelligently whether "the ends of substantial justice cannot be attained without discontinuing the trial," it is well recognized that "a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961); *see also United States v. Arrington,* 867 F.2d 122, 125 (2d Cir.), *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). In reviewing a decision to declare a mistrial over objection, we have noted that, "when unforeseen events intrude into the trial, the trial judge's decision whether manifest necessity exists to declare

---

4. For the purposes of this discussion, we will assume without deciding that Bottone, Sr. object-ed to the declaration of a mistrial in a timely manner.

a mistrial should be afforded the 'highest degree of respect.'" *Corey v. District Court of Vermont,* 917 F.2d 88, 90 (2d Cir.1990) (quoting *Arizona v. Washington,* 434 U.S. 497, 511, 98 S.Ct. 824, 833, 54 L.Ed.2d 717 (1978)). Accordingly, we will not disturb the district court's determination that there was manifest necessity absent an abuse of discretion,[5] *United States v. Klein,* 582 F.2d 186, 190 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). When evaluated against the foregoing framework it is clear that the district court, which patently was concerned that the impact of the Robles investigation would fatally obfuscate the actual issues in the Blue Thunder case, did not abuse its discretion by concluding that a mistrial was a manifest necessity.

First, prior to the declaration of a mistrial, the jury already had heard testimony regarding "dirty drug-dealing cops." Although this evidence largely was irrelevant to the facts of the Blue Thunder case, its potential to sidetrack the trial and impede the jury from focusing on the defendants' guilt or innocence is apparent. In fact, the record reveals that prior to the mistrial declaration, various Government witnesses were questioned regarding whether they thought Robles was a "corrupt officer" or whether he was "selling drugs." Accordingly, the district court's conclusion that the jury would hopelessly be distracted into considering the culpability of Robles and the other officers clearly was justified.

Second, prior to the declaration of a mistrial, several of the defense attorneys themselves expressed concern about jury confusion and the potential prejudice that could result therefrom. During the April 15, 1993 robing room conference, Basciano's counsel stated:

> [T]he government misconduct is what this jury is going to be trying rather than the allegations alleged against these defendants.

----

5. In light of the Government's opposition to the mistrial in this case and our conclusion that there was no intentional misconduct on the part of the Government, the "strictest scrutiny" standard of review urged by the Bottones is inappropriate. *See Arizona v. Washington,* 434 U.S. 497, 508, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978)

. . . .

> [T]his trial is now hopelessly mired in a side issue. Let the government figure out who was bad, what they did, prosecute those people.... [B]ut until that happens, to put this Court and these defendants and us in the position of every day playing catchup ball with new mind boggling information I just don't think is fair.

. . . .

> I think, Judge, it's early enough in the proceeding for the Court to at least cut the damage here.... To put this jury through another seven months of this exercise where for three months we're going to be trying police corruption and for three months we're going to be trying narcotics allegations, it's not right.

During this conference, counsel for Bottone, Jr. also pointed out that "[t]he case has been tainted.... The process of gaining the evidence is tainted, and the case is tainted for that reason.... I renew the application to dismiss the case.... There are no controls that can be put into effect here that would be appropriate." Defense counsels' concern over whether the trial could continue on track to a valid verdict lends strong support for the district court's determination regarding the necessity for a mistrial.

Third, with regard to the defense's ability to obtain potentially exculpatory evidence arising from the investigation of Robles and other police officers, it quickly became apparent to the district court that no amount of cross-examination of Government witnesses would be "sufficient to cure the prejudice to the defendants." This determination was based upon the Government's weekly revelations of "new allegations of misconduct involving an ever widening circle of police officers," which placed the defendants in the untenable position of being forced to restrategize and reassess their case almost daily. Specifically, the district court expressed its

----

("strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused").

concern that, due to the continued unfolding of events with regard to the police misconduct investigation, the defense would receive impeachment or exculpatory evidence on a piecemeal basis. Given this concern, the district court opined that the defendants would suffer "incurable prejudice as [they] are forced to adjust to the shifting allegations against the agents." We cannot disagree with this conclusion.

Fourth, the district court feared that the jury would be unfairly swayed by the publicity arising directly from the Government's disclosures. No fewer than nine articles discussing the Blue Thunder investigation or the police misconduct case appeared in various New York City newspapers prior to the April 16, 1993 mistrial declaration. In fact, by March 29, 1993, two jurors had already become aware of an investigation into police misconduct and asked whether it would affect the Blue Thunder case. Moreover, on April 15, 1993—the day before the declaration of a mistrial—counsel for Bottone, Jr. informed the district court that he would take the case to the "jury of public opinion." Given the media's interest in any potential connection between the Blue Thunder case and the Robles' investigation, fear as to the non-sequestered jury's ability to remain impartial and decide the case solely on the evidence at trial was justified. *Cf. United States v. Bauman*, 887 F.2d 546, 552 (5th Cir.1989) (concern for jury exposure to "prejudicial media influence" was valid consideration when declaring a mistrial), *cert. denied*, 493 U.S. 1077, 110 S.Ct. 1128, 107 L.Ed.2d 1034 (1990).

Finally, the district court declared a mistrial only after carefully evaluating the feasibility of alternative, curative measures and concluding that these measures would not remedy the ills that had infected the trial. The district court determined that expanded cross-examination and additional discovery were insufficient remedies due to the day-to-day uncovering of new, potentially exculpatory materials. It further concluded that a continuance pending the completion of the Robles' investigation would subject the jurors and all the parties to months of unfair and uncertain delay. Indeed, the lengthy delay was stressed by Basciano's counsel, and we agree that it was an unacceptable option. Additionally, the district court's consideration of judicial economy in its decision to grant a mistrial was appropriate. While this factor is not afforded tremendous weight, it does implicate the public's interest in the trial. *See Somerville*, 410 U.S. at 469, 93 S.Ct. at 1072 (indicating that avoidance of delay and waste of money is a policy reason for allowing courts to declare mistrials). Given that most of the defendants had joined in the application for a mistrial, it was wholly appropriate for the district court to declare a mistrial over the objection of only two defendants. The trial was scheduled to be several months long and was terminated after little more than a month. Thus, it would have been a tremendous waste of resources to prosecute the Bottones separately and then spend another several months reprosecuting the other defendants.

Therefore, in light of the overwhelming support in the record for the district court's decision to declare a mistrial due to manifest necessity, we are constrained to conclude that the district court did not abuse its discretion in making that decision.

## CONCLUSION

For all of the foregoing reasons, the July 30, 1993 Order of the district court denying appellants' motion to dismiss the indictment is AFFIRMED.